Argued and submitted December 21, 1988, reversed March 1, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## ARTEMUS SAUDE,
*Appellant.*

## (10-87-07565; CA A47051)

769 P2d 784

Mary M. Reese, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Michael Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds,* Judges.

RIGGS, J.

---

* Edmonds, J., *vice* Warden, J., retired.

**RIGGS, J.**

Defendant was convicted by a jury of unlawful manufacture, ORS 475.992(1)(b), possession, ORS 475.992(4)(b), and delivery, ORS 475.992(1)(b), of a Schedule II controlled substance. He appeals, assigning as error the trial court's denial of his motion for a judgment of acquittal. We reverse.

Defendant was arrested during a police raid on the home of Lund and Reab. Four people were present in the house at the time of the raid: defendant, Lund, Reab and O'Lauke. Defendant was a guest at the home and had been staying there for about three weeks. Because he was recovering from a broken leg that limited his mobility, he slept in the living room during his stay. O'Lauke was also a visitor in the home and had been present for about three days.

During the search of the premises, the police discovered laboratory components and chemicals used to manufacture methamphetamine in the garage, along with a small amount of methamphetamine and two samples of the methamphetamine precursor phenyl-2-propanone; two cellophane bags containing 10 ounces of methamphetamine inside a duffel bag on top of O'Lauke's coat in a room adjacent to the living room; several photographs of the interior of the garage; a shooting range with a drawn target depicting a pig dressed as a police officer; various items of drug paraphernalia; and weapons. Most of the laboratory components and chemicals in the garage were in locked cabinets. The only identifiable fingerprints recovered from the laboratory glassware were Lund's. The duffel bag containing the larger quantity of methamphetamine was said at trial to belong to O'Lauke.

Among the seized photographs were two depicting defendant. In the first, defendant, Lund, O'Lauke and a male identified only as "Phil" are shown together in the garage. In the second, defendant is shown standing in front of the locked cabinets containing the methamphetamine production materials. A funnel and a hotplate are visible on the countertop behind defendant. Holes in defendant's jeans are visible in both pictures.

In considering a motion for a judgment of acquittal, the evidence must be viewed in the light most favorable to the state. After any conflicts in the evidence have been resolved in

the state's favor, "we take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt." *State v. Krummacher,* 269 Or 125, 137-38, 523 P2d 1009 (1974).

 The state's evidence showed that defendant was present at a location where methamphetamine was being made. In order to support defendant's manufacturing conviction, however, the evidence must show that defendant knowingly participated in or aided or abetted manufacturing. ORS 475.992(1)(b); ORS 161.115(2); ORS 161.150; ORS 161.155(2)(b). Mere presence at the scene of the manufacture, even with knowledge of the activity, is not sufficient. *State v. Moczygemba,* 234 Or 141, 144, 379 P2d 557 (1963); *State v. Schrag,* 21 Or App 655, 658, 536 P2d 461, *rev den* (1975). The evidence that comes closest to directly linking defendant with the manufacturing operation is the photographs. They depict defendant present in the garage where the methamphetamine was made, wearing a pair of jeans having holes said by the state to be consistent with acid burns.[1] Without some testimony to that effect, however, the mere presence of holes in defendant's jeans was not evidence sufficient to permit the jury to find him guilty beyond a reasonable doubt on the manufacturing charge. *See State v. Krummacher, supra.*

██ ██ The evidence was also insufficient to support the charges of possession and delivery of methamphetamine. Possession of contraband may be either actual or constructive, *State v. Oare,* 249 Or 597, 599, 439 P2d 885 (1968), but no controlled substances were found on defendant's person in this case. Constructive possession is made out if the state shows that the defendant knowingly exercised control of or the right to control the illegal substance. *State v. Weller,* 263 Or 132, 501 P2d 794 (1972). No evidence was presented that defendant had any right to control any of the methamphetamine seized in the raid. The state's case in support of the delivery charge turned entirely on the proposition that the quantity of methaphetamine found was too large to have been

---

[1] Neither the jeans nor any expert testimony regarding the holes was presented at trial, but the prosecutor contended in closing argument that the holes were caused by acid burns.

intended for personal use. Because no jury could have found beyond a reasonable doubt that defendant possessed any quantity found in the raid, the trial court should also have granted defendant's motion for a judgment of acquittal on the possession and delivery charges. *See State v. Krummacher, supra.*

■ Because we reverse defendant's convictions as not being supported by the evidence, the principles of former jeopardy prohibit a retrial. *State v. Howley,* 94 Or App 3, 764 P2d 233 (1988).

Reversed.