Argued and submitted March 31, reversed June 22, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# JAN MARIE BAUER,
*Appellant.*

## (91CR2043FE; CA A77820)

876 P2d 802

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals her convictions for possession of marijuana, ORS 475.992(4)(a), maintaining a place used for keeping or selling marijuana, ORS 475.993(1)(e), and frequenting a place where controlled substances are kept, ORS 167.222. She assigns error to the denial of her motion for judgment of acquittal on those counts. We reverse.

Viewed in the light most favorable to the state, the evidence at trial established these facts: On May 7, 1991, Douglas County Sheriff's deputies executed a search warrant at a two bedroom single-wide mobile home. A man, referred to as "Mr. Bauer," and three children were in the trailer when the officers arrived. While the officers were conducting the search, Marie Dodge Kjersti, another resident of the trailer, also arrived.

The officers found a small amount of marijuana in a kitchen cupboard, approximately one ounce of marijuana and a half-dozen "marijuana roaches" in a tin in the den/dining room area, a pot in the utility room containing the stem and root ball of a marijuana plant and, on the dining room table, a mirror with razor blade marks and what appeared to be methamphetamine residue. In the master bedroom, which Mr. Bauer occupied, the officers found a spoon with methamphetamine residue in a dresser drawer and two baggies containing approximately two and one-half ounces of marijuana plus a hypodermic syringe in the closet. The closet also contained women's clothing.

In the master bedroom, the officers also found correspondence and prescription bottles bearing the name of defendant Jan Marie Bauer.[1] The record does not disclose whether the correspondence or the prescription bottles bore any address or other information tying defendant to the trailer. The officers never observed defendant at the trailer, either during the search or during seven or eight subsequent trips there. Defendant was arrested nine months later, in February 1992.

---

[1] One of the officers who participated in the search testified that the officers found "correspondence. I believe even prescription bottles."

Defendant argues that this evidence was insufficient for the jury to find beyond a reasonable doubt the essential elements of any of the three offenses for which she was convicted. "Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury so to find." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989).

ORS 475.992(4) makes it "unlawful for any person knowingly or intentionally to possess a controlled substance." Possession may be actual or constructive. *State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968). Because there is no evidence that defendant actually possessed the controlled substances, our inquiry focuses on the sufficiency of proof of constructive possession. "To prove constructive possession, the state must prove that defendant knowingly exercised control over, or the right to control, the contraband." *State v. Garcia*, 120 Or App 485, 488, 852 P2d 946 (1993). Although there is no direct evidence in this case that defendant had control of contraband or had a right to control it, "evidence that the contraband is found in quarters owned or occupied by the defendant" can be sufficient to allow the inference that defendant has a right to control the contraband. *State v. Nehl*, 19 Or App 590, 592, 528 P2d 555 (1974), *rev den* (1975). Thus, any inference of constructive possession rests, ultimately, on the sufficiency of the state's proof that defendant owned or occupied the trailer.

There was no direct evidence that defendant owned or occupied any portion of the trailer. The state offered no documentary evidence, *e.g.*, postal or tax records, that defendant lived at or owned the trailer. Nor did anyone testify that defendant resided there. Indeed, there was no evidence that anyone had ever seen defendant at the trailer.

Consequently, any finding of constructive possession necessarily depended on an *inference* that defendant occupied the trailer. That inference, in turn, depends entirely on three pieces of circumstantial evidence: (1) the master bedroom contained women's clothing; (2) correspondence and prescription bottles bearing defendant's name were found somewhere in the trailer's master bedroom; and (3) defendant's last name is the same as that of the man who lived at the trailer. We examine each in turn.

The state did not present evidence that the women's clothes belonged to defendant or would fit defendant. It offered no evidence to explain away the logical assumption that the clothing belonged to the woman resident, Kjersti, the only woman ever seen at the trailer.

The prescription bottles and correspondence were not introduced into evidence. No witness testified as to the date or address on those items or to whether the prescription bottles contained anything or were empty.[2] Nor does the record disclose the quantity or nature of the correspondence. *Compare State v. Elder*, 11 Or App 481, 503 P2d 725 (1972) (affirming drug possession conviction where correspondence found in room with contraband bore the defendant's name *and* address of the house being searched and "all of the evidence of occupancy of the room" pointed to the defendant alone).

Finally, the state offered no evidence, other than the common last name, to show that defendant had any relationship to the man at the trailer. From the evidence before the jury, defendant could have been Mr. Bauer's sister, sister-in-law, former wife, wife, or none of these.[3]

The state's circumstantial evidence was insufficient, as a matter of law, to permit the jury to infer occupancy and, hence, constructive possession beyond a reasonable doubt:

"When, on a motion for judgment of acquittal, an inferred fact is used to establish an element of the offense or negate a defense, the jury may be left free to infer that fact only when two requirements are satisfied: (1) sufficient evidence has been offered of the existence of the fact(s) giving rise to the inference to allow a rational factfinder to find the underlying fact(s) beyond a reasonable doubt; and (2) a rational factfinder could find that the inferred fact follows more likely than not from the fact(s) giving rise to the inference. When, however, the inferred fact is the sole basis for finding the existence of an element of the crime, a third restraint comes into play. *In order to meet the requirement of proof of each*

---

[2] Nor did any witness testify to the location of the items in the master bedroom, which Mr. Bauer indisputably occupied.

[3] One officer made an off-hand statement that "Mrs. Bauer was not home." This unelaborated and conclusory statement is not evidence that defendant was married to Mr. Bauer, much less that she lived in the trailer.

*element of the crime beyond a reasonable doubt, the jury must be convinced that the inferred fact follows beyond a reasonable doubt from the underlying fact(s)." State v. Rainey,* 298 Or 459, 466, 693 P2d 635 (1985). (Emphasis supplied.)

*Accord State v. Weller,* 263 Or 132, 501 P2d 794 (1972) (the defendant's occupancy of one of three bedrooms on the second floor of a residence in which a woman and another man also lived was insufficient for the jury to find that he had a right to control marijuana plants found in an unoccupied bedroom on the second floor).

*State v. Saude,* 95 Or App 428, 769 P2d 784 (1989), is illustrative. There, the prosecutor asked the jury to infer that holes in the defendant's jeans were caused by acid burns and to then infer from that and from the fact that the defendant posed for a picture in a garage used to manufacture methamphetamine that defendant manufactured methamphetamine. We held that, without some evidence that acid caused the holes in the defendant's jeans, there was not sufficient evidence for the jury to convict the defendant of manufacturing.

So too here. Just as the holes in the defendant's jeans in *State v. Saude, supra,* could have been caused by acid burns or a hundred other non-inculpatory causes, the circumstantial evidence here could be consistent with defendant's occupancy of the trailer or with myriad other circumstances. The inferences are equally plausible. None preponderates, much less beyond a reasonable doubt. Thus, the evidence was insufficient as a matter of law to permit an inference of occupancy and, hence, of defendant's constructive possession of the controlled substances.[4]

For similar reasons, the trial court should have granted defendant a judgment of acquittal on the charges of maintaining a place used for keeping or selling marijuana. ORS 475.993(1)(e) provides:

"It is unlawful for any person:

"* * * * *

---

[4] *Accord State v. Moore,* 14 Or App 268, 271-72, 511 P2d 880 (1973) (where evidence of the defendant's control of drugs was "equally consistent" with a contrary finding, there was "no evidence to show beyond a reasonable doubt that the defendant had a right to control" the drugs).

"(e) To keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft or other structure or place, while knowingly permitting persons to use controlled substances in such places in violation of ORS 430.400, 475.005 to 475.285 and 475.940 to 475.995, or which is used for keeping or selling them in violation of ORS 430.400, 475.005 to 475.285 and 475.940 to 475.995."

The state presented no evidence that defendant owned or leased the trailer and, as we have concluded, there was not sufficient evidence for the jury to conclude that she even lived there. Consequently, there is no evidence from which the jury could find beyond a reasonable doubt that defendant "maintained" the trailer.

Finally, the court erred in failing to grant a judgment of acquittal on the charge of frequenting a place where controlled substances are kept. ORS 167.222 provides, in part:

"(1) A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 430.400, 475.005 to 475.285 and 475.940 to 475.995.

"* * * * *

"(4) As used in this section, 'frequents' means repeatedly or habitually visits, goes to or resorts to."

The evidence does not allow the jury to find beyond a reasonable doubt that defendant frequented the trailer. Moreover, and as significantly, there is no evidence that defendant "knowingly permitted" the keeping of the controlled substances. In *State v. Pyritz*, 90 Or App 601, 605, 752 P2d 1310 (1988), we held:

" '[P]ermitting' means that one who, (1) having legal authority over persons who use, keep, or sell illegal controlled substances, at the specified place where the defendant frequents or remains, (2) authorizes or consents to such use, possession or sale. This definition of 'permit' merely makes express what was implied in earlier cases defining 'permit': Before one can be said to 'permit' something, one must have authority to forbid it."

The state presented no evidence from which the jury could find that defendant had legal authority over the unspecified person(s) keeping the controlled substances in the trailer.

Reversed.