Argued and submitted July 21, affirmed December 9, 1998

STATE OF OREGON,
*Respondent,*

*v.*

ISAIAH RĪDER, JR.,
*Appellant.*

(DCR96-14563; CA A97857)

970 P2d 258

Robert C. Weaver, Jr., argued the cause for appellant. With him on the briefs were Daniel J. Casey and Garvey, Schubert & Barer.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Edmonds and Haselton, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Defendant appeals his conviction for possession of less than one ounce of marijuana, a violation. ORS 475.992(4)(f). He argues that the state failed to prove by a preponderance of the evidence that he actually or constructively possessed marijuana. We review *de novo*[1] and affirm.

We must determine whether there are facts that show by a preponderance of the evidence that defendant actually or constructively possessed less than an ounce of marijuana. ORS 153.805(2); s*ee also State v. Saude*, 95 Or App 428, 431, 769 P2d 784 (1989) (holding that "[p]ossession of contraband may be either actual or constructive"). Here, the presence of marijuana is not in dispute. Thus, we must determine only whether the record contains evidence to establish that it is more probably true than not that defendant possessed the marijuana. *See Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958) (preponderance means "that the facts asserted are more probably true than false").[2]

■■ To establish constructive possession, the state must prove that defendant "knowingly exercised control of or the right to control" the marijuana. *Saude*, 95 Or App at 431. Further, to support an inference of constructive possession, the state must prove more than defendant's mere presence in the vehicle where the marijuana was found; it must produce evidence that defendant had some right to control the marijuana. *State v. Myers*, 55 Or App 370, 373, 637 P2d 1360 (1981).

■ The facts are taken from the testimony and exhibits produced at trial and, as noted below, are disputed. At around 11:00 p.m. on October 30, 1996, Kelley, Crist, Kunle Thomas and Adetokunbo Thomas, who had been bowling

---

[1] Both the state and defendant agree that the applicable standard of review here is *de novo*, citing ORS 46.340(4), and, under that standard, we affirm defendant's conviction. We do not address what, if any, changes may have been made in that standard of review by the repeal of ORS 46.340(4). *See* Or Laws 1995, ch 658.

[2] We note that the preponderance standard is satisfied by a lower degree of certainty than is required in criminal cases where proof must be beyond a reasonable doubt. *See Cook*, 214 Or at 527 (criminal standard requires facts showing that allegations "are almost certainly true").

earlier that evening, called defendant to see if he wanted to "shoot some pool [or] get a couple of beers" with them in downtown Portland. Defendant agreed, and, in two cars, Kelley, Crist, and the Thomas brothers drove to defendant's apartment in Lake Oswego. Kunle drove a white Honda with Crist in the front passenger seat, and Kelley drove a red Toyota with Kunle's brother, Adetokunbo, as his passenger.

After both cars arrived at defendant's apartment, defendant got into Kunle's car. Defendant sat in the right rear passenger seat. Due to defendant's large frame, Crist had to move his seat as far forward as it would go. A few minutes later, Kunle pulled over along Highway 43 because he wanted to talk to Kelley and Adetokunbo about which night club to visit. Kelley pulled in behind Kunle and parked about a car length behind. Kelley then got out of the Toyota, walked forward and got in the left rear seat of Kunle's car to find out why he had stopped.

Around the same time, Clackamas County Sheriff's Deputies Manion and Carkner were responding to a reported prowler near a railroad track off Highway 43, just north of Lake Oswego's city limits. While walking back to their patrol cars, they saw the white Honda and red Toyota pull off Highway 43 and stop. The deputies also saw the driver of the Toyota get out of his car and enter the Honda.

Both Manion and Carkner claimed that they then saw the person who was sitting in the right rear passenger seat of the Honda get out and walk back to the Toyota. Manion testified that, when that person reached the rear car, he "hollered * * * '[t]ime for a smoke break.' " Carkner testified that he also heard those words but was not sure if the person from the Honda, or the person in the Toyota, had said them. Crist and Kelley could not recall if anyone had left the Honda. Kunle, who was driving the Honda, claimed that he was the person the officers saw moving between the vehicles. The person from the Honda then returned to that car.

Manion wanted to talk with the occupants of the Honda and told Carkner to take a "cover" position by the rear car while Manion approached the Honda. Carkner subsequently stood close to the Toyota's front passenger door, conversed with Adetokunbo, the only person in that car, and

carefully observed the occupants of the Honda while Manion approached and made contact.

Manion testified that when he got to the rear bumper of the Honda, he saw and smelled marijuana smoke "pouring" out of the Honda's rear passenger window. Carkner testified that, from his vantage point, he did not see anyone smoking anything inside the Honda and did not see or smell any marijuana smoke. Kunle, Crist and Kelley testified that no one in the Honda had been smoking marijuana and that Crist had been smoking a cigarette.

As he approached the Honda, Manion testified that "none of these people in this car see [*sic*] me standing behind them." When he got to the Honda, Manion claimed to have seen defendant holding a Coke can to his mouth with one hand while holding a lighter with the other. According to Manion, the can had "a quantity of burning material on [it] that looked like either it had just been lit and was smoldering or the burning matter was burning out and smoldering out." Manion said that he then shined his flashlight into the Honda, asked the occupants what they were doing and told defendant to place the can and lighter on the seat next to him, which defendant did.

The can, which the state submitted into evidence, is a standard, red Coke can that has been altered minimally to accommodate smoking marijuana. The can's sides are indented; the poptop opening serves as the mouthpiece. Along the same side as the mouthpiece, near the can's bottom, several small holes have been made. When used to smoke marijuana, a person would hold the can horizontally, place the marijuana on the area above the small holes and draw smoke through the mouthpiece. The size of the holes makes them difficult to discern, and their location makes them visible from only one direction. Essentially, the alterations make the Coke can in evidence here difficult to distinguish from any other discarded and slightly crumpled Coke can.

Kunle stated that the Coke can was his, was used for smoking marijuana, had been left in the car from days earlier and had not been used since that time. Kunle also claimed that he had left the can under the right front passenger seat,

which meant that it was no longer concealed when the seat was moved forward to accommodate defendant's size. Kunle, Crist and Kelley testified that defendant never held the can or lighter.

After contacting the Honda's passengers, Manion instructed them to place their hands in front of their bodies. Carkner claimed that when he saw the passengers in the front car lift their hands, he turned to look at Adetokunbo "to see how he reacted to see if there was a problem." He estimated that he took his eyes off the front car for about five seconds. Immediately after contacting the passengers, Manion noted that the passengers were "very" cooperative with him and that, for the next few moments, the passengers "just sat there." Given their inaction, Manion "decided th[at] was a good time to open the door and grab the can and the marijuana and lighter" and opened the right rear passenger door and reached under defendant's arms and over his legs. Manion also claimed, though with some uncertainty, that just after retrieving the items, he asked defendant to get out of the car, patted him down and asked him to get back in the car. Carkner testified that he did not see or hear a door open on the Honda and did not see Manion pat down defendant until approximately 20 minutes after Manion had first approached the Honda.

In contrast to Manion's testimony, Kunle, Crist and Kelley claimed that Manion shined a flashlight into the car, spotted the can on the floor of the back seat near defendant's feet and asked defendant to hand it to him through the open window, which, as a safety feature, could be opened only halfway. They also testified that Manion patted down defendant about 20 minutes later.

Immediately after obtaining the can, marijuana and lighter, Manion placed them on the trunk of the Honda and, after obtaining identification from the Honda's passengers, Manion brought the seized items to Carkner. At a hearing on a pretrial motion to suppress, Carkner testified that when Manion walked up to him with the contraband, Manion said that he had reached through the window to retrieve the items. However, at trial, Carkner said that that statement was wrong. Carkner claimed that "what [Manion] actually

told me that night [wa]s that he reached in and grabbed the pop can. I made the assumption that he reached through the window because I didn't see or hear the door open or close." Carkner stated that he changed his testimony because he and Manion compared questions and answers after the hearing in preparation for their testimony at trial.

As to the amount and nature of the marijuana seized, Manion claimed that he obtained a quantity large enough to fill a tablespoon and three times as thick as a tablespoon and that it was charred partially where it had been smoldering. Carkner testified that, at the scene, Manion showed him an amount the size of an "eraser on a pencil," which was consistent with the quantity (.14 grams) produced at trial. Also, the state's crime lab technician who analyzed the substance testified that she received .14 grams of marijuana, used up no more than half that amount in her tests and was certain there were no burned or charred portions on that evidence.

Manion cited defendant for possession of less than one ounce of marijuana and, after a trial to the bench, the trial court found defendant guilty by a preponderance of the evidence. Defendant appeals that conviction.

In defendant's only assignment of error, he contends that because "the *only* evidence that defendant was in physical possession or had knowledge of the presence of marijuana * * * came from * * * Manion, * * * the validity of defendant's conviction stands entirely on Manion's testimony," which was not credible. Because we find that defendant was guilty by a preponderance of the evidence without consideration of Manion's testimony, we do not address that credibility issue.

■ As noted, proof by a preponderance of the evidence is all that is necessary to prove a violation. When evaluating the evidence *de novo*, we give no deference to the trial court's findings of fact, except to the extent that the trial court made a credibility determination based on the demeanor of a testifying witness. *Krueger v. Ropp*, 282 Or 473, 479, 579 P2d 847 (1978). If, however, such a "determination [wa]s based on a comparison of the witness' testimony with the substance of other evidence," then we may assess that witness' credibility

ourselves. *State ex rel Juv. Dept. v. G. P.*, 131 Or App 313, 319, 884 P2d 885 (1994).

Defendant argues that, "[a]side from Manion's highly questionable testimony, there is no evidence that defendant was ever in [actual or constructive] possession of the marijuana seized." Though he is correct that, without Manion's testimony, there is no direct evidence of possession, the record nonetheless contains persuasive circumstantial evidence on that issue. *See State v. Lerch*, 296 Or 377, 396, 677 P2d 678 (1984) (stating that there is no distinction between direct and circumstantial evidence as to degree of proof necessary to establish a fact); *see also State v. Krummacher*, 269 Or 125, 139-40, 523 P2d 1009 (1974) (circumstantial evidence alone, if sufficient to show proof beyond a reasonable doubt, can support verdict in criminal case).

First, the record contains the following uncontested and material evidence. On their way to a nightclub in downtown Portland, defendant and his companions pulled over on a secluded portion of Highway 43. Defendant sat in the right rear passenger seat of the car from which marijuana, a marijuana smoking device and a lighter were recovered. The testimony of defendant's own witnesses placed the lighter in the backseat next to defendant and the smoking device at his feet. Second, the trial court did not find credible Crist's testimony with respect to the lighter, and we give deference to that conclusion.[3] Third, Carkner, whom the court found credible, testified that the person who was sitting in the right rear passenger seat of the Honda got out, walked back to the Toyota and, while there, either that person or Adetokunbo said, "[t]ime for a smoke break."

---

[3] Crist, who was sitting in the Honda's front passenger seat, claimed that, after lighting a cigarette, "we were kind of all turned and talking about where we were going to go, and I believe I either put [the lighter] on the console in between the two seats or the rear seat. I don't recall correctly." As to that testimony, the trial court concluded:

"I at least noted from my observations of Mr. Crist in making that statement [about the location of the lighter] * * * it appeared to me that Mr. Crist was decidedly uncomfortable in his explanation of how that lighter could have logically gotten from the front seat where he was lighting his cigarette * * * to the back seat * * *."

Thus, the evidence shows that, when he and his friends stopped on the secluded portion of the highway, defendant got out of the Honda, went to the rear car, and someone said, "[t]ime for a smoke break." Defendant then returned to the Honda, from which a smoking device, marijuana and a lighter were recovered. Lastly, before Manion's seizure of those items, defendant's witnesses placed the items close to defendant. Taken together, those facts lead to the reasonable inference that it is more probably true than not that defendant had the right to control the marijuana. Thus, even without Manion's testimony, the state proved by a preponderance of the evidence that defendant constructively possessed marijuana.

Affirmed.