Argued and submitted June 30, reversed November 26, 2003

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL LEE FRY,
*Appellant.*

01CR1790FE; A116769

80 P3d 506

Jamesa J. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Schuman and Wollheim,* Judges.

SCHUMAN, J.

---

* Wollheim, J., *vice* Kistler, J., resigned.

**SCHUMAN, J.**

Police officers encountered defendant and three companions sitting in a parked car. Also in the car were three syringes that contained methamphetamine residue, as well as several syringes and a drug preparation kit that were not tested. At trial, after the court denied defendant's motion for a judgment of acquittal and his motion to compel the state to specify which syringe or syringes he allegedly possessed, defendant was convicted of possession of a Schedule II controlled substance. He assigns error to the trial court's denial of those motions. Because we conclude that the evidence was insufficient to prove that defendant possessed any of the three syringes testing positive for methamphetamine, we reverse without addressing defendant's second assignment of error.

██ We view the evidence in the light most favorable to the state, accepting all reasonable inferences that the finder of fact could have drawn from it. *State v. Presley*, 175 Or App 439, 443, 28 P3d 1238 (2001). Defendant, Rittenhouse, Maron, and DeFord were inside a parked car. Although Rittenhouse owned the vehicle, defendant was sitting in the driver's seat. Rittenhouse was in the front passenger seat, Maron was in the back seat behind Rittenhouse, and DeFord was in the back seat behind defendant. As a police officer drove up to the car, he heard one of its occupants yell "cop," and he observed all four occupants moving about as if they were attempting to hide items. The officer specifically saw defendant bend forward and then come back up.

The officer got out of his car, approached Rittenhouse's vehicle on the driver's side, and began speaking with DeFord, who had continued to move about while the officer parked his vehicle. During that conversation, the officer observed two syringes sticking out of DeFord's sock. One was completely empty and one contained a small amount of yellow liquid that was determined later to be methamphetamine. DeFord's wrist bore signs of a recent injection. A second officer asked Maron to get out of the vehicle, and, as he did so, a full syringe fell out of the waistband of his pants. That syringe also contained methamphetamine.

The first officer then asked defendant to get out of the vehicle, and, while defendant was complying, the officer saw a syringe on the floor beneath the driver's seat approximately halfway between the front and back. The officer testified that the syringe was nearly empty but contained "a red substance, with some off colored red substance" that was still wet. Neither the syringe nor its contents were submitted for testing. The officer checked defendant briefly for injection sites and found none.

After all four occupants had left the car, the officers discovered a fifth syringe under the front passenger seat where Rittenhouse had been sitting. That syringe contained methamphetamine. They also found approximately 10 unused syringes in the trunk and an open purse between the front driver and passenger seats. The purse was accessible from every seat in the vehicle and contained items used to liquify powered methamphetamine and load it into syringes.

■■■ Defendant was tried and convicted for possession of a Schedule II controlled substance. ORS 475.992(4)(b). Proof of either actual or constructive possession is sufficient to establish guilt of that crime. *State v. Sosa-Vasquez*, 158 Or App 445, 448, 974 P2d 701 (1999). A defendant constructively possesses an object if he or she exercises control over it or has the right to do so. *Id.* The defendant's right of control need not be exclusive; it may be exercised jointly with other persons. *State v. Coria*, 39 Or App 507, 511, 592 P2d 1057, *rev den*, 286 Or 449 (1979). However, mere presence in the proximity of a controlled substance is not a sufficient basis from which to draw an inference of constructive possession; such an inference is reasonable only if other evidence establishes a link between the defendant's presence where the drugs are found and his right to control those drugs. *State v. Miller*, 157 Or App 489, 492, 972 P2d 896 (1998), *rev den*, 328 Or 365 (1999).

*State v. Oare*, 249 Or 597, 439 P2d 885 (1968), is illustrative. In that case, police officers executed a warrant to search Sigari's house and found him standing immediately in front of a toilet bowl while leaning over and looking into it. The defendant was standing slightly behind Sigari. *Id.* at 598. The toilet had just been flushed and in the water were some plastic bags containing marijuana. *Id.* Further, on the

back of the toilet was a box containing evidence of marijuana and on a chest of drawers immediately in front of the toilet was a lighted marijuana cigarette. *Id.* The defendant did not reside in the home nor was any evidence of marijuana found on his person. *Id.* at 598-99. The defendant was convicted of possession of a controlled substance. On appeal, he argued that the state had failed to prove that he had possessed a controlled substance. The court agreed, holding that the evidence perhaps justified an inference that the defendant was a spectator but not that he was in actual or constructive possession of the marijuana. *Id.* at 599.

Likewise, in *State v. Saude*, 95 Or App 428, 430, 769 P2d 784 (1989), the defendant was arrested during a raid at a home where he had been a guest for approximately three weeks. The police found drug paraphernalia in the residence; in the garage, they found laboratory equipment and chemicals used in the manufacture of methamphetamine. *Id.* at 430. The police also found photographs of the defendant and two other individuals standing in front of the garage with laboratory equipment visible on a counter top directly behind the defendant. On appeal from his conviction for possession and delivery of a methamphetamine, the defendant challenged the sufficiency of the evidence. The state argued that proof of the defendant's presence at the scene of manufacture and of the quantity of the drugs found were sufficient to establish constructive possession. We disagreed, explaining that "[n]o evidence was presented that [the] defendant had any right to control any of the methamphetamine seized in the raid[,]" regardless of its quantity. *Id.* at 431. *See also Sosa-Vasquez*, 158 Or App at 448 (the defendant's physical proximity to drugs insufficient to prove he constructively possessed them without evidence that he controlled or had the right to control them).

The link between a defendant's proximity to drugs and the constructive possession of them can take various forms. A defendant's own statements can provide the necessary link. In *Presley*, evidence of the defendant's close connection to the home where drugs were found, along with his own statements confessing to cocaine use and discovery of a crack pipe on his person, was sufficient to establish that he was in constructive possession of the cocaine found in the home. 175

Or App at 445-46. *See also State v. Garcia*, 120 Or App 485, 488, 852 P2d 946 (1993) (constructive possession found where drugs found hidden in apartment where the defendant was staying *and* the defendant admitted to handling the bag of drugs); *State v. Rider*, 157 Or App 480, 483, 970 P2d 258 (1998) (police officers heard either the defendant or a companion say, "[t]ime for a smoke break").

Other facts that can establish a link between a defendant's proximity to contraband and a right to control that contraband include identifying characteristics on the drug container, *State v. Williams*, 253 Or 646, 647-48, 456 P2d 489 (1969) (defendant constructively possessed drugs in vials that had labels identifying vials as belonging to defendant and other evidence suggested that defendant was a resident of the home); defendant's conduct indicating that he is under the influence of a controlled substance, *Miller*, 157 Or App at 492-93 (defendant in constructive possession of drugs found in back seat of car where the evidence showed that the defendant was a passenger in the car, appeared to be under the influence of controlled substances, and the drugs were found in close proximity to where defendant had been sitting and to his personal belongings); and a defendant's participation in a criminal conspiracy that involved the use of a contraband item, *State v. Wrisley*, 138 Or App 344, 349, 909 P2d 877 (1995), *rev den*, 327 Or 521 (1998) (evidence proving the defendant was part of a criminal conspiracy with individuals within the vehicle who were in actual possession of a weapon is sufficient to sustain a conviction for possession of that weapon).

Under the principles illustrated by those cases, we conclude that defendant's conviction must be reversed—a conclusion we reach only because we conclude that no rational finder of fact could find that the facts and inferences flowing from them establish defendant's guilt beyond a reasonable doubt. *Presley*, 175 Or App at 443. We note preliminarily that defendant was not tried for possession of empty syringes or other drug paraphernalia. We therefore focus, as we must, on the narrow question whether there is evidence from which a factfinder could reasonably infer that defendant exercised, or had the right to exercise, control over any or all of the controlled substances found and confirmed as

such: the contents of one syringe found in Maron's waistband, the contents of the syringe found in DeFord's sock, and the contents of the syringe found under Rittenhouse's seat.

The syringes obtained from Maron and DeFord were found on their persons; there is no evidence that the needles were being shared or that defendant otherwise had the right to control over those syringes. The situation is analogous to that in *State v. Chandler*, 2 Or App 107, 467 P2d 127 (1970), where the police found a marijuana pipe in the pocket of a coat lying on the front seat of a car in which the defendant was a passenger. *Id.* at 108. The coat belonged to another passenger. *Id.* We held that, because the owner of the coat was present in the vehicle, and because the coat and its owner were in the front seat while the defendant was in the back seat, there was insufficient evidence to support an inference that the defendant was in constructive possession of the pipe. *Id.* at 109. In this case, DeFord and Maron were present in the backseat of the vehicle and the syringes were found on their persons. Those facts do not support an inference that defendant was in constructive possession of those two syringes.

The third syringe was found under the seat of the front passenger, Rittenhouse. There is nothing more than defendant's presence in the car to connect him to that syringe—no link between his proximity and some right to control. Although the police officer testified that he saw defendant engage in a furtive gesture before being questioned, that gesture was leaning forward and then coming back up into a sitting position. That gesture might connect him to the syringe found beneath his seat, but there is no evidence from which it can be inferred that the red substance in that syringe contained any controlled substances. The state does not argue, and the facts cannot support the inference, that defendant's gesture somehow established that he had control over the syringe found under Rittenhouse's seat any more than the defendant in *Oare* had control over the marijuana within his reach but more obviously in the control of another person. The evidence establishes proximity and nothing more. Defendant did not own the car. The police found no marks from recent injections or other evidence that

he had recently used or was under the influence of methamphetamine. Neither defendant nor his companions made any admissions as to what transpired within the car prior to the officers' arrival. No markings or other identifying characteristics on the syringe suggested that defendant had used, or had the right to use, that syringe. As in *Oare,* the most that reasonably could be inferred from this scenario is that defendant was present where drugs were being used. The facts do not support an inference that he controlled any of the unused drugs.

Reversed.