Argued and submitted July 16, reversed November 18, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KAYLA DAWN BORDEN,
aka Kayla D. Borden,
*Defendant-Appellant.*

Lincoln County Circuit Court
18CR43865; A169585

476 P3d 979

Upon searching a car that was occupied by defendant and two others, police found 6.8 grams of methamphetamine "in the middle underneath" the front passenger seat where defendant had been sitting. The state charged defendant with unlawful possession of methamphetamine, ORS 475.894, and unlawful delivery of methamphetamine, ORS 475.890. At the close of the state's case in defendant's jury trial, defendant moved for judgment of acquittal and the trial court denied the motion. The jury returned a verdict of guilty on both counts. Defendant appeals, contending that there is insufficient evidence to support her conviction for either charge. *Held*: The trial court erred in denying defendant's motion for judgment of acquittal, because the evidence at trial did not supply the necessary connection between defendant's presence in the car and the right to control the drugs found under the seat in which she had been sitting. Because the evidence was insufficient to support a finding that defendant constructively possessed the methamphetamine, it was necessarily also insufficient to support her delivery conviction.

Reversed.

Sheryl Bachart, Judge.

Anna Belais, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed.

**LAGESEN, P. J.**

Defendant appeals a judgment of conviction for one count of unlawful delivery of methamphetamine, ORS 475.890, and one count of unlawful possession of methamphetamine, ORS 475.894. She contends that the evidence is insufficient to support her conviction on either count and, therefore, that the trial court erred in denying her motion for judgment of acquittal on each count.[1] We agree and reverse.

We review the trial court's ruling on defendant's motion for judgment of acquittal to determine whether, viewing the facts and reasonable inferences that may be drawn from those facts in the light most favorable to the state, "a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Koenig*, 238 Or App 297, 301, 242 P3d 649 (2010), *rev den*, 349 Or 601 (2011) (internal quotation marks omitted). We state the facts, which in this case are few, in accordance with that standard.

Martin works at an assisted living facility in Lincoln County. He noted that, over the course of several days, someone was parking a red BMW in the facility's lot without permission. One afternoon, he saw that the car was back, occupied this time by three people: the driver (Marsh), a front passenger (defendant), and a backseat passenger (Garcia). As Martin watched, Marsh injected drugs between his fingers. Martin approached the car, calling police as he did. Marsh saw Martin coming and immediately drove away.

The City of Newport Police Department dispatched Officer Humphreys, Officer Randall, and Nero, Randall's narcotics detection canine, to respond to Martin's call. Spotting the red BMW in the parking lot of a Chevron, they pulled in behind it. Marsh had gone into the store, and

---

[1] Defendant also raises assignments of error challenging the trial court's instruction to the jury that it could return nonunanimous verdicts and the court's acceptance of a nonunanimous verdict on the delivery count. Our conclusion that defendant is entitled to entry of judgment of acquittal on each charge obviates the need to address those assignments of error.

Humphreys followed him in to talk to him about Martin's report.

The officers next decided to have Randall walk Nero around the car, and asked defendant and Garcia to get out of the car before they did so. Humphreys advised Marsh, Garcia, and defendant that they were detained. Marsh took off running. Humphreys ran after him, caught him, and brought him back to the Chevron and placed him in the patrol car.

In the meantime, Randall proceeded with the dog sniff and Nero detected narcotics in the car. Randall searched the car and its contents and found drug paraphernalia, a digital scale, and methamphetamine. The scale and most of the paraphernalia, including some syringes, were located in a mesh case "in the driver's floorboards." A small vial of methamphetamine was also in the mesh bag. Under the front passenger seat, Randall found a large bag containing 6.8 grams of methamphetamine. The bag was located "in the middle underneath" the seat, such that it would have been reachable from the backseat as well as the front seat. In defendant's purse, Randall found several syringes that "didn't appear to be used" or have any residue on them. When he searched Garcia, he found some drug straws. Randall also found some bank cards that were not in the name of anyone in the car, something he associated with criminal activity.

After Randall discovered the drugs and paraphernalia, Garcia asked to speak alone with Marsh, who remained in the patrol car. Randall allowed him to do so. Although Marsh initially had denied responsibility for the drugs, after Garcia and Marsh spoke for a while, Marsh changed his story and claimed ownership of the drugs. Randall asked him if Garcia had threatened him. Marsh responded, "[W]hat do you think?"

Randall later listened to Marsh and Garcia's conversation on his in-car video. Although he could not hear it well because he had had his music going, he heard Garcia ask Marsh why "everyone needed to go to jail" and tell Marsh "that he would feed him in jail, like put money on his books."

Garcia also told Marsh that, if the drugs had belonged to him, he would have claimed them.

Based on that chain of events, the state charged defendant with unlawful possession of methamphetamine and unlawful delivery of methamphetamine. On the possession charge, the state's theory was that (1) defendant constructively possessed the methamphetamine found in the BMW or (2) defendant aided and abetted Marsh and Garcia's possession of the methamphetamine. On the delivery charge, the state's theory was that, because the amount of methamphetamine in the car exceeded an amount consistent with personal use, it was inferable either that (1) defendant constructively possessed an amount of methamphetamine inconsistent with personal use, something that, in the state's view, would permit her conviction under the reasoning of *State v. Boyd*, 92 Or App 51, 53-54, 756 P2d 1276, *rev den*, 307 Or 77 (1988), or (2) defendant aided and abetted delivery of that methamphetamine by either Marsh or Garcia through her constructive possession of the methamphetamine. The trial court denied defendant's motion for judgment of acquittal on the charges, and the jury found defendant guilty on both counts. The verdict form reflects that the jury found defendant guilty of possession as a principal and of delivery as an accomplice. Defendant appealed. On appeal, she contends that there is insufficient evidence to support her conviction for either charge.

We agree. To convict defendant of possession under its theory that defendant constructively possessed the methamphetamine found under the seat in which she was sitting,[2] the state had to prove that defendant "exercise[d] control over it or ha[d] the right to do so." *State v. Fry*, 191 Or App 90, 93, 80 P3d 506 (2003). Evidence that defendant was near the methamphetamine is not enough: "[M]ere presence in the proximity of a controlled substance is not a sufficient

---

[2] We do not understand the state's theory of possession to rest on the small vial of methamphetamine found in the mesh bag under Marsh's seat. In all events, there is no evidence to support a finding that defendant actually or constructively possessed that methamphetamine. There is no evidence that she used it, had it in her possession, or had any right to control it. The most that can be inferred on this record is that she watched Marsh inject methamphetamine likely taken from that kit.

basis from which to draw an inference of constructive possession; such an inference is reasonable only if other evidence establishes a link between the defendant's presence where the drugs are found and [her] right to control those drugs." *Id.*

Here, the evidence does not supply the necessary connection between defendant's presence in the car and the right to control the drugs found under the seat in which she was sitting. In fact, on this record, it is speculative to infer that defendant knew about the bag of methamphetamine under the seat before Randall found it, let alone had the "right" to control it.

Following their arrest, Marsh and Garcia were the ones that conferred about the drugs, and they did not include or mention defendant in that discussion. The car did not belong to defendant, and there was no evidence that she regularly rode in it or had been in the car for an extended period of time.[3] There is no evidence that defendant had used methamphetamine while she was in the car or recently; although she had syringes in her purse, those syringes had not been used. The methamphetamine was found "in the middle underneath" her seat, a location that would not be visible to a passenger (unless the passenger in a car that did not belong to her took the unlikely step of looking beneath the seat to see what the car's owner might have stashed there). There is no evidence that defendant herself placed the methamphetamine under the seat, and, as Randall testified, the location of the methamphetamine was such that it was just as reachable by a backseat passenger as it would be by a front seat passenger. There is no evidence that either Marsh or Garcia told defendant about the methamphetamine under the seat. There is no evidence that defendant's relationship with either Marsh or Garcia was of a nature that would make it reasonable to infer that they had told her about the methamphetamine under the passenger seat. There also is no evidence that defendant was in the business of dealing methamphetamine. Finally, although there was evidence that defendant was in the car with Marsh when he injected drugs between his fingers, it would be speculative to infer

---

[3] Marsh told police that the car belonged to his brother.

from that evidence that Marsh's conduct alerted defendant to the methamphetamine under her seat. That is because a different (and more likely) source of those drugs was found under Marsh's seat—the mesh bag with the vial of methamphetamine, syringes, and other drug paraphernalia. *See, e.g.*, *State v. James*, 266 Or App 660, 674, 338 P3d 782 (2014) (evidence was insufficient to support the inference that alcohol that minors consumed was from a particular source controlled by the defendant where the record reflected that the alcohol could have come from a range of sources).

Although each case presenting a question of evidentiary sufficiency must necessarily turn on its own record, as defendant observes, this case resembles *Fry*. There, we also concluded that the evidence was insufficient to support a finding that the defendant had the right to control methamphetamine found in a car. In that case, methamphetamine was discovered in two syringes found on the persons of other people in the car and one syringe found under the seat where the owner of the car was sitting. *Fry*, 191 Or App at 96. We concluded that the evidence established merely that the defendant was near the drugs, not that he had any right to control them, noting that it was not the defendant's car, there was no evidence that the defendant had recently used methamphetamine or was under the influence of it, and there was no evidence, in the form of admissions by the defendant or the other people in the car, "as to what transpired in the car prior to the officers' arrival." *Id*. at 96-97. On that record, we concluded that "the most that reasonably could be inferred from this scenario is that defendant was present where drugs were being used." *Id*. at 97. The same is true here.

As for delivery, the state acknowledges in its brief, and acknowledged at oral argument, that defendant's conviction was predicated on the theory that defendant's act of constructively possessing the methamphetamine rendered her liable as an accomplice to a *Boyd* delivery by either Marsh or Garcia.[4] Because we have concluded that the

---

[4] In its brief, the state refers to a *Boyd* delivery by Marsh; its argument below generally would have suggested to the jury that it could have found defendant liable as an accomplice to either Garcia or Marsh, without necessarily having to differentiate between the two.

evidence is insufficient to support a finding that defendant constructively possessed the methamphetamine, it necessarily is insufficient to support a finding that she acted as an accomplice to a delivery through the conduct of constructive possession (to the extent that that is a legally viable theory in the first place, something we question).

		In all events, regardless of whether the state's particular theory of accomplice liability was legally sound, the same evidentiary deficits recounted above mean that the evidence is insufficient to permit a finding that defendant was an accomplice to a delivery of methamphetamine, when we take into account the statutory requirements for accomplice liability. For defendant to be liable as an accomplice, the evidence would have to support a finding that defendant, "[w]ith the intent to promote or facilitate the commission" of a delivery by another, "[a]id[ed] or abet[ted] or agree[d] or attempt[ed] to aid or abet" another in "planning or committing" the delivery. ORS 161.155(2)(b). Here, at a minimum, there is no evidence to allow a reasonable factfinder to infer that defendant had "the intent to promote or facilitate" the delivery of the methamphetamine found under the seat in which she was sitting. As mentioned, it is speculative to infer that she even knew about it.

		Reversed.