No. 434 May 20, 2026 715

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY TSZWENG CHAN,
aka Anthony T. Chan, aka Anthony Tszqeng Chan,
aka Anthony Tzweng Chan, aka Tony Chan,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR43648; A182742

David F. Rees, Judge.

Submitted October 2, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

Defendant appeals from a judgment following a bench trial in which the trial court found him guilty of attempted delivery of methamphetamine, ORS 475.890 and ORS 161.405 (Count 3), and possession of methamphetamine, ORS 475.894 (Count 4).[1] The trial court merged the guilty verdict on Count 4 into the guilty verdict on Count 3. Defendant raises two assignments of error in a combined argument. He challenges the trial court's denial of his motion for judgment of acquittal on Counts 3 and 4. He contends that the evidence was insufficient to prove that he had constructive possession of methamphetamine. Alternatively, he argues that the evidence was insufficient to establish that his constructive possession constituted a substantial step towards delivery of methamphetamine. We conclude that the evidence, viewed in the light most favorable to the state, was sufficient. Therefore, the trial court did not err when it denied defendant's motions for judgment of acquittal on attempted delivery (Count 3) and possession (Count 4), and we affirm.

## I.   STANDARD OF REVIEW

We review whether the evidence is sufficient for a conviction "by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). We describe the following facts consistently with that standard.

## II.   STATEMENT OF FACTS

On February 23, 2021, an officer stopped defendant after observing him drive past at a "higher-than-average" rate of speed and exit the highway without using a turn signal. The officer asked defendant for his license, registration, and insurance information. He observed that defendant was "extremely sweaty" and had beads of sweat dripping

---

[1] Defendant was also charged with delivery of heroin, ORS 475.850 (Count 1); possession of heroin, ORS 475.850 (Count 2); and felon in possession of a restricted weapon, ORS 166.270 (Counts 5 through 9). The court granted defendant's motion for judgment of acquittal on Counts 5, 6, 7, and 9 and following the bench trial, found defendant not guilty of Counts 1, 2, and 8.

down his forehead even though it was a cold and clear night. Defendant told the officer he did not have his license on him and asked if he could try to locate a photo of his license on his phone, during which time the officer observed over defendant's shoulder a photo of defendant fanning out a "large amount" of cash. Defendant was unable to present a photo of his license, and he then asked the officer if he could double check if he had it with him in his wallet. When defendant opened his wallet, the officer observed that defendant had a large amount of cash in his wallet. Because defendant did not have his license with him, the officer arrested him for failure to carry and present a license.

The officer looked up defendant's name and birth date in a law enforcement database and reported the car's license plates to dispatch for its registration information. He discovered that defendant had an outstanding arrest warrant for unlawful use of a vehicle and that the car defendant was driving was registered to another man. Defendant explained that his girlfriend had recently purchased it and was the registered owner. The officer asked defendant if he was a drug user, and defendant told him that he was. The officer asked if there were drugs in the car, and defendant said no. Defendant then consented to the officer's search of the vehicle.

During the search, the officer opened the center console directly below the radio. Inside, in a tin, the officer found a plastic bag and a twisted bindle of suspected methamphetamine. The substance was later confirmed to be 13.7 grams of methamphetamine. The officer found four other bags of suspected methamphetamine and a twisted bindle of suspected methamphetamine, weighing 7.84 grams, in the center console, but he did not recall if those were in the tin or not. The court treated those as a "drug-like substance" because the substances had not been tested. Also in the tin were empty, unused bags that matched the bags in which the methamphetamine and suspected methamphetamine were found.[2]

---

[2] The officer also found 1.3 grams of heroin across three small bags, weapons, $909 in cash, and checks from the State of Oregon made out to people that were not defendant. The trial court acquitted defendant of the charges related to those items. The state does not rely on them on appeal, and we do not consider that evidence when resolving defendant's assignments of error.

The officer asked defendant if he was a drug dealer and defendant said no. The officer asked if he could search defendant's phone. Defendant consented to a cell phone search. The officer observed photos dated from 2018 and 2020 of heroin with a scale and piles of cash. He also saw text messages that were several weeks old that showed people asking defendant about drugs and defendant responding that he could acquire drugs for them.

As relevant to this appeal, defendant was charged with attempted delivery of methamphetamine, ORS 475.890, ORS 161.405 (Count 3), and possession of methamphetamine, ORS 475.894 (Count 4). Defendant waived his right to a jury trial. At the bench trial, the officer testified that present drug use can be indicated by "heavy breathing, super sweaty, dilated pupils, constricted pupils, [and] slurred speech," among other things. He also testified that a typical user amount of methamphetamine is between under a gram to seven grams a day.

Defendant moved for judgment of acquittal on Counts 3 and 4. The trial court denied the motions on Counts 3 and 4, and it ultimately found defendant guilty of those counts. Defendant appeals and raises the same arguments that he made during his motions for judgment acquittal before the trial court.

### III.   ANALYSIS

Defendant challenges the sufficiency of the state's evidence to establish that he had constructive possession of the methamphetamine. He argues further that, even if he did have constructive possession, the state failed to establish that his possession constituted a substantial step towards the crime of delivery of methamphetamine. The state responds that the evidence was legally sufficient to establish the elements of both the possession and attempted delivery charges.

A.   *Possession*

A person commits the crime of unlawful possession of methamphetamine if they "knowingly or intentionally possess methamphetamine." ORS 475.894. "'Possess' means to have physical possession or otherwise exercise dominion

or control over property." ORS 161.015(9). As that definition indicates, the state may establish that a defendant possessed a controlled substance by proving "either actual or constructive possession[.]" *State v. Tacia*, 330 Or App 425, 431, 543 P3d 713 (2024).

Constructive possession of a controlled substance requires evidence that "the defendant exercised control over or had the right to control the substance." *Id*. "Mere proximity to a controlled substance is not a sufficient basis from which to draw an inference of constructive possession." *Id*. (internal quotation marks and brackets omitted). But a defendant's "conduct indicating that he is under the influence of a controlled substance" may "establish a link between a defendant's proximity to contraband and a right to control that contraband[.]" *State v. Fry*, 191 Or App 90, 95, 80 P3d 506 (2003). However, evidence is insufficient to support an inference when "it requires too great an inferential leap—that is, when the logic is too strained" or when it "requires the stacking of inferences to the point of speculation." *State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004) (internal quotation marks omitted).

Questions of the sufficiency of the evidence must be evaluated on a case-by-case basis. *State v. Borden*, 307 Or App 526, 532, 476 P3d 979 (2020). Our prior case law provides useful guidance however. As we explain below, we have concluded that evidence is insufficient to permit an inference that a defendant had possessed drugs found in a car when the record has lacked evidence that the defendant had recently used drugs or were involved in selling drugs. By contrast, the record in this case permits both of those inferences.

Defendant relies on cases in which we have concluded that the evidence was insufficient for a factfinder to infer constructive possession of a controlled substance, including *State v. Kulick*, 314 Or App 680, 497 P3d 789 (2021); *Fry*, 191 Or App 90; *State v. Keller*, 280 Or App 249, 380 P3d 1144 (2016); and *Borden*, 307 Or App 526. As we explain below, those cases are distinguishable, however, because the record in this case included evidence of defendant's constructive possession that was not present in those cases.

In *Kulick*, the defendant was driving a car by himself. 314 Or App at 681. An officer pulled him over because the car had expired registration tags. *Id.* The defendant explained that his girlfriend had recently purchased the car and had not yet completed the registration process. The defendant consented to the officer searching the car, and in center console, the officer found a tooter, which is a straw used for ingesting drugs, "with a white crystalline substance inside." *Id.* (internal quotation marks omitted). The defendant said that he did not know that the tooter was in the car and that it was not his, but he offered to take responsibility for it because "his girlfriend had kids." *Id.* at 681-82 (internal quotation marks omitted).

We concluded that the evidence failed to establish the defendant's possession of the tooter. It would have "require[d] too great an inferential leap" to infer that the defendant owned the car or even that he had regular access to the car from "his mere possession of his girlfriend's car on this single occasion." *Id.* at 683. We also noted that there was "no evidence that [the] defendant himself had placed the tooter in the car"; "that [the] defendant had used, or was under the influence of, methamphetamine while he was in the car"; or that the "defendant's past methamphetamine use" could be linked "with the tooter's presence in his girlfriend's car." *Id.* The defendant's proximity to the tooter and his general knowledge of what a tooter was constituted insufficient evidence to "support an inference beyond a reasonable doubt that he knowingly exercised control over, or had the right to control" the tooter. *Id.* at 684.

In *Fry*, the defendant and three other people were inside a parked car. 191 Or App at 92. The defendant was sitting in the driver's seat of the car, which was owned by one of the other people. An officer found a syringe beneath the driver's seat, two syringes on one of the passengers, and a syringe that fell out of the waistband of another passenger, and the third passenger's "wrist bore signs of a recent injection." *Id.* at 92-93. The officer discovered another 10 syringes and equipment to liquify powdered methamphetamine in the trunk and in a purse that anyone in the car could have reached. *Id.* at 93. The defendant showed no signs

of recent intravenous drug use; he had no injection marks. *Id.* We concluded that there was insufficient evidence for a factfinder to find that the defendant had constructive possession of any of the syringes. *Id.* at 97. We explained that "[t]he most that reasonably could be inferred from this scenario is that [the] defendant was present where drugs were being used." *Id.*

The same was true in *Borden*. The defendant was charged with unlawful possession and unlawful delivery of methamphetamine. 307 Or App at 528. She was a passenger in the front seat of a parked car when an officer observed the driver of the car inject himself with drugs. *Id.* Police found "drug paraphernalia, a digital scale, and methamphetamine," and "a large bag containing 6.8 grams of methamphetamine" in an area accessible from the front seats and back seats. *Id.* at 529. The defendant had several unused syringes in her purse. *Id.* We concluded that that evidence was insufficient to establish the defendant's possession of the methamphetamine and was also insufficient to establish the unlawful delivery of methamphetamine. *Id.* at 530-31. The defendant's presence in the car was insufficient to infer that she possessed the drugs found under her seat because the record lacked evidence that the defendant had recently used drugs. *Id.* at 531. We also noted that the record lacked evidence that the defendant was involved in selling methamphetamine. *Id.*

In *Keller*, the defendant was arrested for unlawful possession of heroin after a police officer observed a heroin-contaminated baggie on the passenger seat next to the passenger's leg, out of the defendant's sight. 280 Or App at 254, 257. The defendant had been sitting in the driver's seat. *Id.* at 250. We concluded that the record did not support an inference that the defendant was in constructive possession of the heroin. *Id.* at 254. There was no evidence that he was under the influence or involved in drug dealing, and no evidence that the defendant even knew about the heroin residue. *Id.* at 255-57.

Here, as we noted above, the record contains evidence that permits inferences that were unavailable in *Kulick*, *Fry*, *Keller*, and *Borden*. Most significantly, the

record in this case contains evidence from which a jury could infer that defendant had recently used methamphetamine and was under the influence of methamphetamine during his interaction with the officer. The officer testified that defendant was sweating excessively, and he testified that excessive sweating is a sign that a person is under the influence of drugs. The inference that defendant had very recently used the methamphetamine found within his reach in the car would permit a factfinder to conclude that defendant exercised control over the methamphetamine and, thus, he constructively possessed it. *See State v. Miller*, 157 Or App 489, 493, 972 P2d 896 (1998), *rev den*, 328 Or 365 (1999) (concluding that an officer had probable cause that the defendant was in constructive possession of drugs found in the back seat of car in which the defendant was a passenger when, among other things, the officer determined that the defendant "was under the influence of a controlled substance").

The record also contains evidence from which a factfinder could infer that defendant had sold drugs. The evidence includes drug packaging materials, pictures of a scale, and large amounts of cash. Evidence suggesting that a defendant is engaged in illegal drug dealing permits an inference that the defendant constructively possessed drugs found nearby. *See Keller*, 280 Or App at 256. That fact, too, distinguishes this case from the cases on which defendant relies.

The totality of the evidence in the record permits a factfinder to infer beyond a reasonable doubt that defendant was in constructive possession of the methamphetamine found in the car that he was driving. Therefore, we conclude that the trial court did not err when it denied the motion for judgment of acquittal on the possession charge.

B.  *Attempted Delivery*

The attempt statute provides:

"(1)  A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward the commission of the crime."

ORS 161.405(1). "The crime of attempt has two elements: (1) intentional conduct that (2) constitutes a substantial step toward the commission of the crime." *State v. Hubbell*, 371 Or 340, 361, 537 P3d 503 (2023). "Mere preparation" does not constitute a substantial step. *Id.* at 362. Rather, a substantial step toward delivery of a controlled substance "occurs when a person's conduct (1) advances the criminal purpose charged and (2) provides verification of the existence of that purpose." *Id.* A factfinder may infer that a defendant "has taken a substantial step toward a transfer of controlled substances by acquiring and possessing amounts indicative of distribution and materials usable for packing individual portions." *State v. Buell*, 317 Or App 667, 670-71, 506 P3d 505 (2022), *rev den*, 371 Or 771 (2023) (concluding that the defendant's possession of 17,000 user amounts of methamphetamine, plastic baggies, a scale, and month-old text messages about acquiring and delivering drugs constituted a substantial step towards the crime of delivery).

Possessing large quantities of cash does not, by itself, permit an inference that a defendant has taken a substantial step toward delivery because it is "too general of a practice[.]" *State v. Taylor*, 308 Or App 61, 67, 479 P3d 620 (2020). Possession of a large quantity of controlled substances, by itself, also does not permit such an inference. *State v. Wesley*, 326 Or App 500, 508, 533 P3d 786, *rev den*, 371 Or 511 (2023). But the possession of drugs that have been "broken down into separate user amounts"; the presence of packaging materials, scales, or evidence of transaction records; or an impending drug transaction can be legally sufficient evidence of a substantial step towards delivery. *Id.*at 508-09; *see id*. at 503-04 (concluding that the defendant's possession of 380 grams of methamphetamine, 2.3 grams of heroin, a digital scale, rubber gloves, "prescription bottles with the names ripped off of them," plastic baggies, and over $1,000 in cash constituted evidence of a substantial step towards the crime of delivery); *see also State v. Dippre*, 320 Or App 317, 322-23, 512 P3d 835 (2022) (concluding that the defendant's possession of one large bag of 12.77 grams of methamphetamine along with a scale, unused plastic baggies, and tin foil constituted a substantial step towards the crime of delivery).

We conclude that the record contains sufficient evidence of attempted delivery for similar reasons as in *Wesley*, *Buell*, and *Dippre*. The facts in the light most favorable to the state establish that defendant possessed 13.7 grams of methamphetamine, more than a single user's daily quantity, and another 7.84 grams of a similar looking "drug-like substance." The officer found the methamphetamine and the drug-like substance portioned out into seven separate baggies or bindles. The officer also found matching unused plastic baggies, $909 in cash, and weeks-old text messages that defendant had received from someone asking to acquire drugs and defendant's response that he could help them acquire drugs. That is legally sufficient evidence for a factfinder to conclude that defendant took a substantial step toward the delivery of methamphetamine. Therefore, the trial court did not err when it denied defendant's motion for judgment of acquittal for attempted delivery of methamphetamine.

Affirmed.