Argued and submitted May 19, at Ashland High School, Ashland, Oregon, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings July 9, 2010

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DEVIN JACOB DANIELS,
*Petitioner on Review.*

(CC 200621759; CA A136901; SC S057832)

234 P3d 976

Bronson D. James, Chief Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender.

Gregory A. Rios, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

WALTERS, J.

**WALTERS, J.**

The issue in this criminal case is whether the state adduced evidence from which a jury could find that defendant was in actual or constructive possession of a small quantity of methamphetamine located in defendant's girlfriend's bag. The Court of Appeals affirmed defendant's conviction without issuing a written opinion. *State v. Daniels*, 230 Or App 430, 215 P3d 127 (2009). We allowed review and now reverse.

At trial, the following evidence, viewed in the light most favorable to the state, *see State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009) (stating standard), was presented. On September 21, 2006, police obtained a warrant to search the house that defendant shared with a roommate. Defendant's girlfriend, Perdune, did not live there. The week before the police obtained the warrant, they had noticed a high volume of visitors to defendant's house. One officer had observed four vehicles and five pedestrians within a 20-minute period, suggesting to him that someone at the house was selling illegal drugs. Using a confidential informant, police made a controlled purchase of narcotics.

On September 21, the police knocked on the front door of defendant's house and, when they received no response, made a forced entry. In a safe in defendant's roommate's bedroom, police found a small pistol, a list of transactions, a larger plastic baggie[1] containing smaller plastic baggies, and a plastic container holding a substance commonly used to dilute methamphetamine. In defendant's bedroom, police found a set of digital scales, small plastic baggies, a loaded magazine of .223 caliber rounds for an assault rifle (but no corresponding rifle), and a pink bag.[2] Inside the pink bag was a small baggie identical to the small plastic baggies found in the bedrooms of both defendant and his roommate.

---

[1] At trial, the witness referred to this larger plastic item and the smaller plastic items within it as "baggies." To be consistent with that testimony, we also use the term "baggies."

[2] At trial, some of the participants referred to the container as a "pink bag," "purse," and "backpack," but the only witness, the police officer, used the term "bag" or "pink bag." The container was not introduced into evidence. We also will use the words "bag" or "pink bag."

The baggie in the pink bag contained a small quantity of methamphetamine sufficient for personal use.

Defendant was present during the search, as was Perdune.[3] Defendant's roommate was not. On questioning, defendant confessed to having sold methamphetamine from the residence "about a month ago" and to using methamphetamine regularly, smoking it three to four times per week. Perdune acknowledged ownership of the pink bag.

The state charged defendant with one count of possession of methamphetamine, ORS 475.894,[4] and one count of distribution of methamphetamine within 1,000 feet of a school, ORS 475.892. At trial, defendant twice moved for a judgment of acquittal. In one motion, defendant contended that the state had not proved that defendant's distribution occurred in proximity to a school. The court granted that motion, reducing the distribution charge to the lesser-included charge of delivery of methamphetamine under ORS 475.890. In the other motion, defendant contended that the state had not adduced sufficient evidence to permit a conviction for possession. The trial court denied that motion, and the jury returned a verdict of guilty on both charges, *viz.*, the possession charge and the delivery charge. Defendant appealed the possession conviction, asserting that the trial court had erred in denying his motion for a judgment of acquittal.[5] As noted, the Court of Appeals affirmed.

---

[3] Viewing the record in the light most favorable to the state, there was some evidence that Perdune was present when the search warrant was executed. The police officer who conducted the search testified that "she claimed the bag as being hers." In addition, the officer was not certain whether he interviewed defendant first or last. Because defendant's roommate was not present during the search, it appears that the officer interviewed someone in addition to defendant and that that person was present when the search was conducted. A trier of fact reasonably could infer that Perdune was present and acknowledged ownership of the bag at the time of the search.

[4] ORS 475.894(1) provides:

"It is unlawful for any person knowingly or intentionally to possess methamphetamine unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.285 and 475.840 to 475.980."

[5] Defendant also sought appellate review of the issue of whether a unanimous jury verdict was constitutionally required. We decline to consider that issue on review. *See* ORAP 9.20(2) (court may limit questions on review).

As a preliminary matter, it is important to clarify that defendant's conviction for delivery of methamphetamine did not reflect a jury finding that defendant had delivered methamphetamine to Perdune on or about September 21, 2006. The delivery that the jury was instructed to consider, and that formed the basis for its conviction, occurred 30 days earlier.

In the indictment, the state alleged two separate counts—first that, on or about September 21, 2006, defendant possessed methamphetamine; and second, that, on or between August 1 and September 21, 2006, defendant delivered methamphetamine. During trial, the judge asked the state's attorney to clarify the facts on which they based the delivery charge. The court explained that the jury should be told whether that charge was based on the delivery that defendant told the officer he had made a month before the search, a delivery that may have occurred when the informant bought methamphetamine, or a delivery that may have occurred on the date of the search.[6] The state apparently answered that the delivery charge was based on defendant's statement to the officer because the court instructed the jury accordingly:

"But that * * * the incident alleged in [the delivery] charge is not the incident when the search warrant was served, or it's not the incident, I think Counsel made this clear when the informant went into the house under the officer's supervision with the money, and so forth.

"The incident which is that * * * alleges the basis of this charge is the one based on the officer's testimony about the Defendant telling him when [he] last sold methamphetamine. That's the incident that you're dealing with on that charge, and the issue is did the State prove that beyond a reasonable doubt within the rules of the laws, and [the] instructions that I'm giving you."

(Ellipses in transcript.)

---

[6] In a conference on jury instructions, the trial court told the attorneys that he needed to clarify the charge for the jury because "my concern is * * * so that we've got three possible bas[i]s for a charge, three possible dates, I mean they could say well, it was when the informant went in the house, or they could say, you know, they could look at [the] date the search warrant was served, or they could look at the date 30 days before when the Defendant alleges that he sold the substance, so I want to make sure they know the charge that's before them." (Ellipsis in transcript.)

The court also instructed the jury that the possession charge depended solely on whether defendant possessed methamphetamine on the date that the search warrant was served—September 21, 2006:

> "First charge alleges that the Defendant on or about September 21, 2006 in Lane County, Oregon did unlawfully and knowingly possess a substance containing the Schedule II controlled substance, methamphetamine.
>
> "And the incident that's alleged to be the basis of that charge, is the incident time when the search warrant is served, and that's your question. Was the Defendant at that time, and that was September 21, 2006 is alleged [to have been] when the offense [occurred], unlawfully possessing methamphetamine[?]"

Thus, in light of the trial court's instructions, the issue before this court is whether there was evidence from which the jury could have found that defendant possessed, on September 21, 2006,[7] the methamphetamine that the police found in Perdune's bag when they conducted their search.

■    In ruling on the sufficiency of the evidence of possession of methamphetamine, the question is whether there was sufficient evidence in the record from which a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rader*, 348 Or 81, 91, 228 P3d 552 (2010). "In making that determination, a court must resolve all conflicts of evidence in favor of the state and give the state the benefit of all reasonable inferences." *Id.*

The state advances two alternative arguments for the conclusion that it presented sufficient evidence to support

---

[7] As noted, the indictment alleged that defendant possessed the methamphetamine "on or about" September 21, 2006, but the court instructed the jury that it was required to find that defendant's possession occurred on that specific date. The state did not object to the instruction, nor does it argue in this court that there was evidence that defendant possessed the methamphetamine on a date "on or about" September 21, 2006, other than on that specific date—September 21, 2006. As we understand the state's argument, it does not dispute that, for the purposes of resolving defendant's motion for judgment of acquittal, the question is whether there was evidence from which a reasonable trier of fact could have found that, on September 21, defendant actually or constructively possessed the methamphetamine found in the pink bag. We limit our discussion to that issue.

the jury's verdict of guilty. The state first argues that defendant *actually* possessed the methamphetamine found in Perdune's bag. A person has actual possession of property when the person has physical control over it. *See* ORS 161.015(9) (" 'Possess' means to have physical possession or otherwise to exercise dominion or control over property."); *State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008) ("As a general rule, 'to have physical possession' of property means to have bodily or physical control of it.").

■ The state contends that, although defendant was not in physical control of the methamphetamine when the police discovered it on September 21, there was evidence that defendant had had that methamphetamine in his physical control "just before" the police discovered it. The state points to defendant's admission that he had sold methamphetamine previously, the paraphernalia that the police discovered indicating that a high volume methamphetamine sales operation was ongoing, Perdune's status as defendant's girlfriend, the fact that the methamphetamine was discovered in her bag, and the fact that the methamphetamine was inside a small plastic baggie that was identical to the small plastic baggies found elsewhere in the house. The state argues that the jury could have inferred from that evidence that defendant was the source of the methamphetamine in Perdune's bag and that he therefore had had the methamphetamine in his physical possession on the day of the search before either supplying it to Perdune for her use or placing it in her bag to avoid its discovery by the police.

Although those scenarios are possible, they rely on speculation rather than reasonable inferences. The evidence disclosed that defendant had supplied methamphetamine to others about a month before and that Perdune was in possession of methamphetamine, but not other facts from which a reasonable jury could infer that defendant was the source of that methamphetamine. Defendant had no methamphetamine in his own possession and there was no methamphetamine anywhere else in the house.

■ Even if we were to assume that there was evidence from which a jury could find that defendant supplied Perdune with the methamphetamine or placed it in her bag,

there was not sufficient evidence that defendant did so—and therefore was in possession of the drugs—on September 21, 2006. To establish actual, as opposed to constructive, possession, the state had to prove that defendant had physical control of the methamphetamine on September 21, *i.e.*, that *he* possessed the methamphetamine on *that day*. The state argues that the amount of methamphetamine in the bag was small and that the jury could infer from that fact that Perdune had not had it in her possession for long. If defendant had transferred the methamphetamine to Perdune before September 21, the state contends, she already would have consumed it. What the state overlooks, however, is that the evidence did not disclose the extent or frequency of Perdune's use. The fact that the methamphetamine was in Perdune's bag on September 21 was insufficient to permit a jury to find, beyond a reasonable doubt, that defendant also had that methamphetamine in his physical possession on that date.

■■ In the alternative, the state contends that defendant had *constructive* possession of the methamphetamine in Perdune's bag. The concept of constructive possession broadens the scope of the crime of possession beyond physical control. *State v. Casey*, 346 Or at 60. In accordance with that concept, under ORS 161.015(9), "possess" means not only physical possession, but "otherwise exercis[ing] dominion or control over property."

The state contends that the jury could have found that defendant exercised dominion or control of the methamphetamine on September 21, 2006, because he shared control of it with Perdune. The state relies on the same circumstances outlined above: defendant was a drug dealer and user; defendant and Perdune were in a romantic relationship; and Perdune's bag was located in defendant's bedroom. Accordingly, the state contends that "it is likely that the drugs were *available* for defendant's use, and that he, therefore, constructively possessed them." (Emphasis added.)

■ We reject the state's argument for two reasons. First, proximity to property owned by a social guest does not establish that the host exercises dominion or control over that

property. Second, the facts did not permit a reasonable inference that Perdune was more than defendant's social guest.

In *Casey*, the court considered four factual circumstances on which the state based an argument of constructive possession of a gun owned by a social guest, three of which are relevant here. First, the court considered the fact that the guest brought a gun, concealed on his person, into the defendant's residence. The court held that no reasonable trier of fact could find that the defendant exercised dominion or control over the gun without some evidence that the defendant knew that the guest was carrying a gun. 346 Or at 60-61. Second, as the defendant and his guest were leaving the residence, the guest placed the gun on a counter in the defendant's residence. The fact that the guest did so with defendant's knowledge was also insufficient to establish constructive possession. The court stated,

> "As a general matter, guests retain dominion and control over their own property when they visit another person's home. *See Minnesota v. Olson*, 495 US 91, 99-100, 110 S Ct 1684, 109 L Ed 2d 85 (1990) ('[H]osts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises.'). A guest who hangs his or her hat on the host's hat rack for the duration of a visit does not, by that act alone, give the host dominion or control over the guest's hat. Something more is required to permit an inference that the guest intended to cede or share control of the guest's property with the host."

*Id.* at 61. Third, the court concluded that when the defendant in *Casey* reentered the residence and was again in proximity to the gun for a short period of time, his proximity to the gun, without more, was not sufficient to establish constructive possession. *Id.* at 62-63.

Like *Casey*, the facts in this case do not create an inference of constructive possession sufficient for a reasonable jury to conclude beyond a reasonable doubt that defendant had constructive possession of the methamphetamine. The evidence neither established nor permitted a reasonable inference that defendant knew that the pink bag was in his bedroom or that it contained methamphetamine. There was no evidence that defendant had looked in the bag, that the

bag was transparent, or that the methamphetamine was otherwise discernable. The state contends that a jury could infer defendant's awareness of the methamphetamine from the likelihood that he had sold it to Perdune. But, as we have previously explained, the record does not contain facts that would justify that inferential leap. Without some evidence that defendant knew that the methamphetamine was in Perdune's bag, the evidence, like that in *Casey*, is insufficient to permit a reasonable jury to find that defendant constructively possessed it.

Second, as *Casey* informs us, guests retain dominion and control over their own property when they visit the home of another. The evidence did not permit a reasonable jury to find that Perdune was any more than a social guest at defendant's residence. The evidence did not disclose anything about the relationship between defendant and Perdune other than that it was romantic. There was no evidence, for example, about whether defendant and Perdune had formed a partnership in their personal property, or even how long they had been acquainted. There was no evidence about whether Perdune had permitted defendant to exercise dominion or control over her personal property, or even that he had opened her bag or purse. A romantic relationship and bedroom access does not give rise to an inference of a partnership relationship and purse access.

Viewing the evidence in the light most favorable to the state, we conclude that a rational juror could not have found beyond a reasonable doubt that defendant possessed, on September 21, 2006, the methamphetamine that the police discovered that day. We therefore conclude that the trial court erred in denying defendant's motion for a judgment of acquittal on that charge.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.