Argued and submitted November 17, 2015, reversed and remanded
August 17, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LUCAS DENNIS KELLER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1301538; A156705

380 P3d 1144

Jeffrey S. Jones, Judge.

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Allen, Judge pro tempore.

**HADLOCK, C. J.**

Defendant appeals a judgment of conviction for illegal possession and delivery of controlled substances. He raises a single argument on appeal, asserting that the trial court erred when it denied his motion to suppress evidence that a police officer obtained following defendant's warrantless arrest. Defendant contends that the officer lacked probable cause to believe that defendant had committed a crime and, therefore, acted unlawfully when he made the arrest. Defendant also argues that the officer obtained the evidence in question through exploitation of that unlawful arrest. Accordingly, defendant concludes, the trial court should have granted his motion to suppress. For the reasons set out below, we agree that the trial court should have granted defendant's suppression motion. Accordingly, we reverse and remand.

We state the facts consistently with the trial court's explicit and implicit factual findings, which the record supports. *See State v. Suppah*, 358 Or 565, 567 n 1, 369 P3d 1108 (2016) (applying that standard in reviewing denial of suppression motion). As he was patrolling a rest area at about 7:30 a.m., Oregon State Trooper Nelson noticed two people sitting in a parked car in the back of the lot. According to Nelson, that rest area has a reputation for criminal activity, including drug activity.

As Nelson drove by the parked car, he saw defendant get out of it through the driver-side door, and begin walking around to the front of the car. Nelson testified that he parked near the car, without blocking it or turning on his overhead lights, and walked towards defendant. As he approached, Nelson noticed "an expression of pure fear on [defendant's] face." He asked defendant, "What's going on?" and defendant replied, "Nothing." Through the open passenger-side window, Nelson saw that the passenger appeared to be sleeping. Nonetheless, he asked the passenger, "What's going on?" to which the passenger replied, "Nothing. I'm sleeping." Nelson expressly told both defendant and the passenger, "This isn't a stop."

Through the open passenger-side window, Nelson saw a small piece of clear plastic on the seat by the

passenger's right leg. Nelson testified that the plastic was torn and pulled apart, revealing a brown, gooey residue. Nelson believed—based on his training and experience— that the gooey substance was heroin residue. He testified that the plastic looked like a "heroin baggie" that had been ripped apart, which he had "seen * * * hundreds of times." Although the baggie was not visible from the driver seat, "it was within an arm span where [defendant] was seated in the vehicle."

Based on his observation of the baggie, Nelson believed that he had probable cause to arrest both defendant and the passenger for possession of heroin. He ordered the passenger out of the car, handcuffed defendant and the passenger, and advised both men of their *Miranda* rights. Nelson told defendant that he was being arrested because Nelson had observed drug paraphernalia in the car. Defendant asked, "What kind of drug paraphernalia?" Nelson told defendant that he had seen heroin residue.

Nelson and other officers questioned defendant and the passenger over the course of the next hour. Defendant eventually admitted that he owned the controlled substances in the car and worked as a drug dealer. He also gave Nelson consent to search the car. That search revealed additional drugs, paraphernalia, and cash.

The state charged defendant with delivery of heroin, ORS 475.850, possession of heroin, ORS 475.854, and possession of methamphetamine, ORS 475.894. Defendant filed a pretrial motion to suppress his post-arrest statements and the evidence that officers discovered following his arrest. Defendant argued that suppression was required under Article I, section 9, of the Oregon Constitution because "police unlawfully seized him."[1] In response, the state argued that Nelson had acted lawfully in arresting defendant. The state did not argue either in its written response to defendant's motion to suppress or at the suppression hearing that, if Nelson had acted unlawfully by arresting defendant, he

---

[1] Article I, section 9, guarantees that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

had not exploited that illegality to obtain the evidence that defendant sought to suppress.

The trial court denied defendant's suppression motion on the ground that Nelson acted lawfully when he arrested defendant because he had probable cause to believe that defendant and the passenger had been "in joint possession of the controlled substance." After the court denied defendant's suppression motion, the parties tried the case to the court based on the evidence that the state had offered during the suppression hearing. The trial court convicted defendant of all the crimes charged.

On appeal, defendant asserts largely the same arguments that he made below. Specifically, defendant contends that the trial court erred when it denied his suppression motion because the arrest "was conducted without objective probable cause that defendant actually or constructively possessed the drugs, which were not visible from the driver seat." Defendant concludes that reversal is required because the state did not "argue below that the later discovery of evidence was attenuated from the unlawful arrest," and it therefore cannot properly make a "lack of exploitation" argument on appeal.

In response, the state argues that Nelson's arrest of defendant was lawful because Nelson had probable cause to believe that defendant possessed heroin. The state also contends that suppression was not required even if the arrest was unlawful because (1) Nelson had at least reasonable suspicion that defendant possessed heroin and therefore could have detained him briefly to investigate the suspected crime, and (2) nothing about defendant's arrest—as opposed to a permissible detention—led to discovery of the incriminating evidence, which followed defendant's consent to search the car. In other words, as defendant anticipated in his appellate brief, the state now argues that Nelson did not exploit any illegality in obtaining that evidence.

We begin our analysis by considering whether Nelson's arrest of defendant was supported by probable cause. "A warrantless arrest is permissible under Article I, section 9, of the Oregon Constitution if the arresting officer

has probable cause to believe that the person has committed a crime." *State v. Gibson*, 268 Or App 428, 430, 342 P3d 168 (2015). In addressing whether Nelson acted lawfully in arresting defendant, we are bound by the trial court's express and implicit findings of fact that are supported by the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Whether those facts establish probable cause is a question of law, and this court reviews the denial of a motion to suppress for legal error. *Id.*

Under Article I, section 9, "probable cause exists only if the arresting officer subjectively believes that it is more likely than not that an offense has been committed and that belief is objectively reasonable." *State v. Williams*, 178 Or App 52, 60, 35 P3d 1088 (2001). To determine whether objective probable cause exists, "we consider the totality of the circumstances presented to the officer and reasonable inferences that may be drawn from those circumstances; no single factor is dispositive." *State v. Kappel,* 190 Or App 400, 404, 79 P3d 368 (2003).

The issue before us in this case is whether Nelson had objective probable cause to believe that defendant either actually or constructively possessed the heroin residue that Nelson spotted on the car seat next to the passenger's leg.[2] *See State v. Sherman*, 270 Or App 459, 461, 349 P3d 573, *rev den*, 357 Or 596 (2015) (unlawful drug possession may be established through proof of either actual or constructive possession). A person "actually" possesses controlled substances if the person "has *actual* physical control of the property." *State v. Daline*, 175 Or App 625, 632, 30 P3d 426 (2001) (emphasis in original). A person "constructively" possesses contraband if the person knowingly exercises control over it or has the right to do so. *State v. Stradley*, 258 Or App 10, 14, 308 P3d 284 (2013). Thus, an officer has objective probable cause to believe that a person constructively possesses contraband if the circumstances "show that, more likely than not," the defendant knowingly exercises control over the contraband or has the right to do so. *State v. Miller,*

---

[2] Defendant does not contend that Nelson lacked subjective probable cause; rather, he argues only that the totality of the circumstances did not objectively establish the reasonableness of Nelson's beliefs that defendant possessed heroin at the time of his arrest.

157 Or App 489, 492, 972 P2d 896 (1998), *rev den*, 328 Or 365 (1999).

In this case, it is undisputed that Nelson spotted, from a lawful vantage point, a baggie containing heroin residue inside of the car in which defendant had been sitting. It is also undisputed that, because the baggie had been located on the passenger's seat, next to the passenger's leg, Nelson had probable cause to arrest the passenger for unlawful possession of heroin. The only question here is whether that same observation also provided Nelson with probable cause to arrest defendant.

We conclude that Nelson's observation of the heroin-contaminated baggie did not, under the circumstances here, give him probable cause to arrest defendant. No evidence in the record suggests that defendant *actually* possessed the heroin residue before his arrest. Nor was Nelson's observation sufficient to support an inference that defendant, more likely than not, *constructively* possessed that heroin. Where the state seeks to prove that a person in a vehicle possessed drugs found in that vehicle, "an inference of constructive possession is reasonable only if some facts link [the] defendant's presence in the [vehicle] where the drugs were observed to [the] defendant's right to control those drugs." *Id.* at 492. Indeed, as the state acknowledges, a person's "mere presence in the proximity of a controlled substance is not a sufficient basis from which to draw an inference of constructive possession." *State v. Fry*, 191 Or App 90, 93, 80 P3d 506 (2003).

Here, the record includes little evidence beyond such proximity, and we conclude that the evidence does not support an inference that defendant probably was aware of the heroin residue, much less that he had a right to control it. At the time he arrested defendant at the rest stop, Nelson was aware of the following facts: (1) defendant had been sitting in the driver's seat of a car parked at the rest stop; (2) a plastic baggie containing a brown, gooey substance consistent with heroin residue was located on the passenger seat of that car, outside of defendant's line of sight; (3) defendant acted nervously and looked afraid when he saw Nelson; and (4) the rest stop was known for illegal drug activity. Nelson certainly could draw on his training and

narcotics-investigation experience in evaluating those facts, which might well have been sufficient to give him reasonable suspicion that defendant was engaged in criminal activity. Nonetheless, for the reasons that follow, we conclude that Nelson's observations did not give rise to objective probable cause to believe that defendant possessed heroin at the time of his arrest.

As noted, the baggie with heroin residue was not in defendant's line of sight; that is, it would not have been visible from where defendant had been sitting. Nothing in the record suggests that the baggie or residue had an appearance indicating that those items were remnants of recent heroin ingestion of which defendant would have been aware. Indeed, Nelson did not testify that he believed that either defendant or the passenger was under the influence of narcotics at the time he arrested defendant. In short, Nelson did not describe anything particular about the small residue-contaminated baggie—other than its proximity to defendant—that suggested that defendant would have been aware of that item.

Nor does defendant's presumed control of the car (given that he had been sitting in the driver's seat) give rise to probable cause that he controlled everything within the vehicle, including property that apparently was in another person's possession. *See, e.g., State v. Daniels*, 348 Or 513, 522, 234 P3d 976 (2010) (owner of residence did not have constructive possession over drugs contained within his romantic partner's purse simply because the purse was in his residence). Finally, the fact that defendant was nervous when he spotted Nelson, and had an expression of "pure fear," adds little to the probable cause analysis under the circumstances of this case. *See State v. Clemons*, 267 Or App 695, 702, 341 P3d 801 (2014) (the nervousness of individuals in a vehicle did not give an officer probable cause to believe that the people possessed drugs, even when the officer knew that one of them had previously possessed drugs during a traffic stop); *State v. Berry*, 232 Or App 612, 618, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010) ("[T]here is nothing inherently suspicious about * * * being nervous when pulled over by a police officer.").

This case differs significantly from those in which we have held that people in a car constructively possessed contraband found in that car, even though they did not actually possess it. For example, in *Miller*, we determined that the state's evidence was sufficient to create objective probable cause that the defendant, a passenger in a car, constructively possessed methamphetamine that was found there. 157 Or App at 493. At the pertinent time, a police officer had observed that both the car's driver and the defendant appeared to be under the influence of methamphetamine; moreover, the officer saw a mirror, with a line of white powder, on the car's back seat, close to the defendant's purse and other possessions. We concluded that the defendant's intoxication and the fact that the drugs were located next to her personal possessions made it reasonable for the officer to infer "that [the] defendant, more likely than not, knew the methamphetamine was on the mirror and had the right to control it." *Id.*

Helpful guidance may also be found in cases in which—affirming trial courts' denials of motions for judgment of acquittal on drug-possession charges—we relied on evidence suggesting an illegal drug-dealing enterprise to conclude that the record supported an inference that the defendant constructively possessed drugs that were found nearby. *See Sherman*, 270 Or App at 462-63 (record allowed jury to conclude that the defendant constructively possessed drugs hidden on another person's body because evidence indicated that the two individuals were participating "in a joint drug-dealing enterprise"); *State v. Leyva*, 229 Or App 479, 484-85, 211 P3d 968, *rev den*, 347 Or 290 (2009) (evidence supported inference that defendant constructively possessed 20 pounds of marijuana in the back seat of a vehicle in which defendant and another person had been driving "for a considerable distance" from one state to another); *State v. Coria*, 39 Or App 507, 592 P2d 1057, *rev den*, 286 Or 449 (1979) (evidence was sufficient to establish that a passenger in a car constructively possessed narcotics hidden within it, because the people in the car were suspected of transporting narcotics between states and the passenger had been traveling with the other people in the car for over a week). In this case, no evidence suggests that defendant

and his passenger were engaged in selling illegal drugs. The absence of such evidence here—and the significance of that evidence to the holdings in *Sherman, Leyva,* and *Coria*—bolsters our conclusion that Nelson lacked objective probable cause to believe that defendant constructively possessed the heroin residue that was located next to his passenger, out of defendant's sight.

Instead, the circumstances in this case are more analogous to those in *State v. Fry,* 191 Or App 90, 80 P3d 506 (2003), in which we concluded that insufficient evidence linked the defendant, who had been seated in the driver's seat of a parked car, with syringes containing drugs that were secreted in the clothing of other people who also had been seated in the car. In holding that the defendant was entitled to a judgment of acquittal on drug-possession charges, we emphasized that no evidence suggested that the men with the syringes had shared the syringes with the defendant, or that the defendant otherwise had the right to control those items. *Id.* at 96-97. Here, too, no evidence other than proximity links defendant to the small amount of a controlled substance that was located close to another person in the car. That is, nothing that Nelson observed before he arrested defendant objectively indicated that—more likely than not—defendant controlled the baggie with heroin residue that was located next to the passenger's leg, out of defendant's sight.

In sum, we agree with defendant that the record was insufficient to permit an inference that defendant probably was aware of the baggie and constructively possessed it. The trial court erred in concluding otherwise.

As noted, the state argues that, even if Nelson's arrest of defendant was unlawful, suppression was not required because defendant consented to the search of his car following that arrest, which did not taint the consent. That argument implicates the "exploitation" analysis that the Supreme Court described in a trilogy of cases: *State v. Unger,* 356 Or 59, 333 P3d 1009 (2014); *State v. Musser,* 356 Or 148, 335 P3d 814 (2014); and *State v. Lorenzo,* 356 Or 134, 335 P3d 821 (2014). The holdings in those cases establish that evidence discovered during a consent search that

follows an unlawful arrest must be suppressed unless the state proves "that the consent was voluntary and was not the product of police exploitation of that illegality." *Musser*, 356 Or at 150 (citing *Unger*, 356 Or at 74-75).

The state, applying the exploitation framework laid out in *Unger*, argues that defendant's consent to search was not prompted by the illegal arrest, which the state asserts "had only a *de minimis* coercive effect" on defendant. However, as defendant points out, the state did not make a "lack of exploitation" argument at the suppression hearing; that is, the state did not argue below that the trial court should deny the suppression motion even if the arrest was unlawful, and the trial court did not perform a "lack of exploitation" analysis.[3] Thus, the state is effectively asking us to affirm the trial court on an alternative basis under the "right for the wrong reason" principle, which we can do only if we conclude that the record before us is materially the same as the one that would have developed had the state raised the alternative basis for affirmance below. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

Defendant contends that the record might have developed differently had the state raised the exploitation argument below. We agree and, accordingly, decline to address that belatedly raised argument. *See State v. Mullens*, 276 Or App 217, 219, 366 P3d 796 (2016) (per curiam) ("[A]s we have previously held, * * * we will not consider the state's lack-of-exploitation argument as an alternative basis for affirmance where that argument was not made below and the record may have developed differently had it been raised."). Moreover, we conclude that the evidence that defendant sought to suppress was essential to defendant's convictions, and the error in denying the suppression motion was, therefore, not harmless.

Reversed and remanded.

---

[3] The state did argue below that defendant voluntarily consented to the search. But "voluntariness of consent" and "exploitation" are distinct inquiries. *See Unger*, 356 Or at 86 ("even if the consent [following unlawful police action] is voluntary, the court must address whether the police exploited their prior illegal conduct to obtain the evidence").