Argued and submitted January 9, 2018, reversed and remanded
November 27, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROSA MARIA SANCHEZ-ANDERSON,
*Defendant-Appellant.*

Washington County Circuit Court
16CR35517; A163078

455 P3d 531

Defendant appeals a judgment of conviction for three controlled-substance offenses. Defendant argues that the trial court erred in denying her motion to suppress evidence obtained from a warrantless search incident to her arrest for unlawful possession of methamphetamine, because the arresting officer lacked probable cause for that arrest. Specifically, defendant argues that the officer did not have an objectively reasonable belief that she, more likely than not, constructively possessed the methamphetamine at issue. The state contends that the arresting officer had probable cause due to defendant's apparent connection to a sizeable drug-trafficking operation. *Held*: The trial court erred. The arresting officer lacked an objectively reasonable basis to believe that it was more likely than not that defendant possessed methamphetamine.

Reversed and remanded.

Eric Butterfield, Judge.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DEHOOG, P. J.

Reversed and remanded.

_____
* DeVore, J., *vice* Hadlock, J. pro tempore.

**DEHOOG, P. J.**

Dependent appeals a judgment convicting her of three controlled-substance offenses: unlawful possession of heroin, ORS 475.854; unlawful possession of methamphetamine, ORS 475.894; and unlawful delivery of methamphetamine, ORS 475.890(2). Defendant assigns error to two rulings of the trial court, in which the court (1) denied defendant's motion to suppress evidence found pursuant to a warrant authorizing a search of three cellphones that defendant had in her possession at the time of her arrest; and (2) denied defendant's motion to suppress evidence derived from a warrantless search of defendant incident to her arrest for suspected drug possession. With respect to the warrantless search incident to arrest, defendant argues that the arresting officers lacked probable cause to arrest her for unlawful possession of methamphetamine, because they had no reason to believe that she had constructively possessed any of the drugs and related items that they discovered in a vehicle that she had recently ridden in.

The state responds that our constructive-possession case law is inapposite, and argues that, under the totality of the circumstances—including facts suggesting defendant's involvement in a sizeable drug-trafficking operation with the vehicle's driver—there was probable cause to arrest her for unlawful methamphetamine possession. The state alternatively argues that the discovery of an empty, but used, syringe under defendant's seat supports an inference that she constructively possessed the drugs found in the vehicle. We conclude that the arresting officers lacked probable cause to arrest defendant and that, therefore, the trial court erred in denying defendant's motion to suppress evidence obtained as a result of that unlawful arrest. Because we further conclude that the cellphones at issue in defendant's other assignment of error were obtained as a result of that unlawful search and that the evidence of their contents was therefore subject to suppression, there is no need to decide whether the challenged warrant properly authorized a search of the phones. Accordingly, we reverse and remand.

When reviewing the denial of a motion to suppress, "[w]e state the facts consistently with the trial court's

explicit and implicit factual findings," provided that there is evidence in the record to support them. *State v. Keller*, 280 Or App 249, 250, 380 P3d 1144 (2016); *see also State v. Suppah*, 358 Or 565, 567 n 1, 369 P3d 1108 (2016) (applying the same standard). In this case, the relevant facts are undisputed.

While on routine patrol, Officer Haugen of the Beaverton Police Department noticed a passenger truck with out-of-state license plates in the parking lot of a motel that he knew to be frequented by drug traffickers. Haugen determined that the truck was a rental vehicle; he also knew that rental vehicles were a common choice among those engaged in drug trafficking. His interest thus piqued, Haugen approached the truck and saw, through a window, a lock box and "a large digital scale box," both located on the floor behind the passenger seat. Haugen contacted motel staff and learned that a man named Mauel was associated with the truck and had rented a room at the motel. Haugen ran a records check on Mauel and discovered that he was on post-prison supervision for heroin possession. Moments later, Haugen saw Mauel leaving a motel room accompanied by defendant. The two approached the rental truck, and Mauel got into the driver's seat while defendant sat on the passenger side. Suspecting potential drug activity, Haugen first watched as Mauel began to drive away, and then, when he saw Mauel commit a minor traffic infraction while leaving the parking lot, Haugen initiated a traffic stop so that he could investigate further. Mauel, who was visibly nervous, handed Haugen a Washington driver's license and, as proof of registration, a rental agreement for the truck. As Mauel gathered those documents, Haugen asked defendant for her name and date of birth. Defendant provided that information, at which point Haugen "reminded her that she was free to leave." Haugen noted that defendant appeared sickly and had facial sores, two signs that Haugen associated with "active" heroin or methamphetamine use, but it does not appear that he believed that defendant was under the influence at the time. After Haugen said that defendant could leave, she stepped out of the truck and began to walk away, taking her purse with her. While still at the scene, Haugen ran a records check using the information that

defendant had provided, but his inquiry came back "unable to locate." That result indicated to Haugen that defendant had given him false information, behavior he viewed as "consistent with somebody that has something to hide from the police."[1]

Meanwhile, another officer with a drug-detection dog had arrived at Haugen's request. When that officer told Haugen that the dog had alerted on Mauel's truck, Haugen proceeded to search the vehicle and its contents. He found considerable evidence of illegal drug activity in the lock box, the digital scale box, and the center console. In the lock box were "[m]ultiple used syringes that had a white crystal substance inside of them, [and] a digital scale with a brown-colored substance on it." Based on his training and experience, Haugen recognized the two substances to be methamphetamine and heroin. The digital scale box contained a large digital scale "caked" with methamphetamine residue and more than 20 "pretty good-sized," unused baggies that Haugen associated with the sale of larger quantities of drugs. The center console contained over $4,000 in cash, which Haugen also associated with drug trafficking. Haugen also found "a used, uncapped syringe"—one as to which he noted no drug residue—underneath the passenger seat, where it was "easily accessible to [defendant] but not Mauel."[2] In addition to finding physical evidence of drug possession and trafficking, Haugen concluded, based on his "experience dealing with the drug culture," that defendant and Mauel were most likely involved in a sexual relationship that involved giving or discounting drugs in exchange for sex.

Based on the foregoing observations, Haugen determined that he had probable cause to arrest defendant for

---

[1] It is not entirely clear from the record when Haugen learned that defendant had not given him her true name during the traffic stop. Defendant does not dispute Haugen's testimony before the trial court that the records check returned "unable to locate" with the name she had given before he called for her arrest. However, in Haugen's affidavit in support of the warrant to search defendant's cellphones, he implies that he may not have discovered that defendant had used a false name until after she had been arrested and searched.

[2] The record does not indicate how Haugen knew that the syringe under the passenger seat was used, but defendant does not challenge that characterization.

unlawful possession of methamphetamine. At Haugen's direction, another officer located defendant and arrested her. Incident to that arrest, the officer conducted a warrantless search of defendant and her purse, where he found methamphetamine, multiple syringes, empty baggies, a digital scale, and three cellphones. Defendant also had more than $600 in cash hidden in her bra. A subsequent warrant search of the cellphones resulted in the discovery of text messages that reflected her involvement in drug trafficking. Defendant moved pretrial to suppress evidence derived both from the warrantless search incident to arrest and the warrant search of her cellphones, but the trial court denied both motions. Defendant waived jury and, following a bench trial based on stipulated facts, was convicted on all counts.

On appeal, defendant assigns error to the denial of each of her motions to suppress. We begin with defendant's argument that her arrest and related search were not supported by probable cause. Defendant contends that her mere presence in the truck and her resulting proximity to the drug residue and related evidence of drug possession and trafficking were insufficient to support an objectively reasonable belief that, more likely than not, she actively or constructively possessed any of those items. Emphasizing that none of her belongings were found near the things that Haugen found, that she made no "furtive" movements when Haugen contacted her, and that she had been a passenger in Mauel's truck for only a short time before Haugen stopped them, defendant argues that there was no indication that she was even aware that drugs were in the vehicle, much less that they were under her ownership or control. As for her use of a false name and Haugen's hypothesis that she and Mauel were involved in a sex-for-drugs relationship, defendant suggests that those considerations add nothing to support the inference that she had the right to exercise control over the drugs and other items found in the vehicle. Thus, citing our opinion in *Keller* and related decisions, defendant argues that Haugen lacked an objective basis to believe that she had constructively possessed the contraband that he found in Mauel's truck, and, accordingly, lacked probable cause to arrest her for unlawful possession of methamphetamine.

The state responds that the constructive possession analysis in *Keller* is inapposite here, where neither occupant of Mauel's truck actively possessed the evidence of drug crimes. That is, as we understand the state's argument, the issue here is not whether there was an objectively reasonable basis to believe, based on her proximity, that, more likely than not, defendant had a right to exercise control over drugs found in Mauel's possession; rather, the state contends, the question is whether, under the totality of the circumstances—which, in the state's view, were suggestive of "a large drug-dealing enterprise"—it was reasonable for Haugen to believe that, more likely than not, anyone in close proximity to the evidence found in the truck was criminally connected to it. Viewed in that light, or so the state seems to argue, the evidence that Haugen found in the rental truck, together with defendant's appearance and behavior, supported a reasonable inference that *defendant* was engaged in drug trafficking, and therefore gave Haugen probable cause to arrest her for unlawfully possessing the detectable quantities of methamphetamine left behind by that trafficking. In support of that argument, the state reasons that a number of circumstances, viewed as a whole, objectively establish that defendant more likely than not "had at least some connection" to the drug-trafficking operation, including that: (1) defendant's appearance was "similar to people who are actively using" drugs; (2) the truck that she rode in was "associated with a substantial drug-trafficking operation"; (3) the drugs and scales found in the vehicle were within her reach; (4) there was a used syringe under her seat; (5) defendant gave false identifying information to Haugen; and (6) in Haugen's view, defendant and Mauel probably were in a sex-for-drugs relationship. The state alternatively argues that, to the extent a constructive-possession analysis does apply, the presence of a used syringe under the passenger seat where it was easily accessible to defendant, but not to Mauel, supports the inference that defendant constructively possessed the drugs found within the vehicle. Below we consider each of those arguments, but ultimately reject them both.

We review the denial of a motion to suppress for legal error. *Keller*, 280 Or App at 253. "A warrantless arrest

is permissible under Article I, section 9, of the Oregon Constitution if the arresting officer has probable cause to believe that the person has committed a crime." *Id.* at 252-53 (internal quotation marks omitted); *see also State v. Miller*, 345 Or 176, 184, 191 P3d 651 (2008) (discussing a similar warrantless arrest provision found in ORS 133.310(1)). Whether the facts known to an officer establish probable cause for an arrest presents a question of law. *Keller*, 280 Or App at 253. "[P]robable cause exists only if the arresting officer subjectively believes it is more likely than not that an offense has been committed and that belief is objectively reasonable." *Id.* (internal quotation marks omitted); *see also Miller*, 345 Or at 184-85 (discussing "probable cause" as defined in ORS 131.005(11)).

Defendant does not dispute that Haugen subjectively believed that defendant had committed a crime; thus, we focus our inquiry on whether that belief was objectively reasonable.[3] "To determine whether objective probable cause exists, 'we consider the totality of the circumstances presented to the officer and reasonable inferences that may be drawn from those circumstances; no single factor is dispositive.'" *Keller*, 280 Or App at 253 (quoting *State v. Kappel*, 190 Or App 400, 404, 79 P3d 368 (2003), *rev den*, 336 Or 509 (2004)). The totality of the circumstances includes "the officer's training and experience." *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). However, generalized observations unconnected to the particular facts and circumstances of a case add little to the probable cause analysis. *See State v. Webber*, 281 Or App 342, 350-51, 383 P3d 951 (2016) (explaining, in the context of a search warrant affidavit, that for an officer's "training and experience" to establish the required nexus between the facts known to an officer and the inference of probable cause to be drawn, an officer is required to connect his or her training and experience to "objective facts derived from other sources" (internal quotation marks omitted)). To determine whether the facts are sufficient to support probable cause,

---

[3] Similarly, defendant does not dispute that, if Haugen had probable cause, the officer who arrested defendant and searched her incident to arrest likewise had probable cause. *See generally State v. Barber*, 279 Or App 84, 90 n 5, 379 P3d 651 (2016) (acknowledging well-settled "collective knowledge doctrine").

we examine them both individually and collectively. *State v. Barker*, 271 Or App 63, 69, 348 P3d 1138 (2015).

At issue in this case is whether Haugen's observations gave rise to probable cause to arrest defendant for the crime of unlawful possession of methamphetamine. Generally speaking, unlawful drug possession can be established through proof of either actual or constructive possession of a specific controlled substance. *Keller*, 280 Or App at 253; *State v. Sherman*, 270 Or App 459, 461, 349 P3d 573, *rev den*, 357 Or 596, (2015)). Actual possession requires "*actual* physical control of the property." *Keller*, 280 Or App at 253 (emphasis in original; internal quotation marks omitted). Constructive possession, on the other hand, is less direct, and describes a person's relationship to property found under the physical control of someone else or of no one at all. As to such property, "an officer has objective probable cause to believe that a person constructively possesses contraband if the circumstances show that, more likely than not, the defendant knowingly exercises control over the contraband or has the right to do so." *Id.* (internal quotation marks omitted). Specific to this case, "[w]here the state seeks to prove that a person in a vehicle possessed drugs found in that vehicle, an inference of constructive possession is reasonable *only* if some facts link the defendant's presence in the vehicle where the drugs were observed to the defendant's right to control those drugs." *Id.* at 254 (internal quotation marks, brackets omitted; emphasis added).

Applying those standards here, we conclude that, even when viewed through the lens of Haugen's training and experience, the totality of the circumstances—including defendant's connection to Mauel, the items found in Mauel's truck, defendant's appearance, and her apparent use of a false name—did not objectively establish a reasonable basis to believe that, more likely than not, defendant possessed methamphetamine, constructively or otherwise. As a result, the officer who arrested defendant and searched her incident to that arrest lacked probable cause to do so. The trial court, therefore, erred in denying defendant's motion to suppress.

We first address the state's argument that a constructive-possession analysis has no bearing on whether

there was probable cause to arrest defendant for unlawful possession of methamphetamine. Notably, the state does not contend that Haugen had probable cause to believe that defendant *actually* possessed the drugs and other evidence of drug trafficking found in the rental truck; nonetheless, the state contends that cases such as *Keller*, in which we have relied on a constructive-possession analysis in determining whether there was probable cause, are inapposite here, where *neither* occupant of the vehicle had actual possession of the drug evidence and the evidence, as a whole, suggested a "substantial drug-trafficking operation." The state, quoting *Keller*, 280 Or App at 256, notes, among other things, that we specifically distinguished the defendant's circumstances in that case from cases "in which 'evidence suggesting an illegal drug-dealing enterprise' supported 'an inference that the defendant constructively possessed drugs that were found nearby.'" Thus, the state argues, the question here is not the question presented in *Keller*, *i.e.*, whether defendant's mere proximity to a controlled substance in someone else's possession established probable cause to believe that defendant herself constructively possessed that substance. Rather, the state contends, the question is whether the evidence of drug-trafficking in this case was such that an officer reasonably could believe that *all* persons in close proximity to that evidence "had at least some connection" to it. For the reasons that follow, however, we disagree with the state's contention that a constructive-possession analysis does not apply.

First, as noted, the state does not contend that defendant *actually* possessed any of the contraband that Haugen found in the truck, and nothing in the record could support such a belief. Thus, given the state's theory that Haugen had probable cause to believe that defendant unlawfully possessed methamphetamine, that leaves *only* the possibility—at least as far as the drugs found *before* defendant was searched are concerned—that defendant's possession was constructive. *See Keller*, 280 Or App at 253 (noting that "unlawful drug possession may be established through proof of either actual or constructive possession" (citation omitted)). That is, although the state contends that *Keller* is distinguishable on its facts, we do not understand

it to argue that possession may be established in some way *other* than actual or constructive possession, and it advances no argument that Haugen could reasonably have inferred that defendant was in actual possession of anything found in Mauel's vehicle.[4]

Second, although it is true that, in *Keller,* 280 Or App at 256, we distinguished cases in which there was "evidence suggesting an illegal drug-dealing enterprise," we did not suggest that in those cases a constructive-possession analysis would not apply. Indeed, as the passage quoted by the state expressly explains, in those cases, evidence of a drug-dealing enterprise itself "supported an inference that the defendant *constructively* possessed drugs that were found nearby." *Id.* at 256 (emphasis added). Rather than concluding that a constructive-possession analysis does not apply in cases involving evidence of a sizeable drug-dealing enterprise, *Keller* merely observes that, in some cases, the evidence of a drug-dealing enterprise is itself evidence of a defendant's right to control drugs found nearby. *Id.* (explaining that in *Sherman*, evidence suggesting that two individuals were engaged "in a joint drug-dealing enterprise" supported an inference that one individual constructively possessed drugs found on another (internal quotation marks omitted)).

Third, in the absence of a constructive-possession analysis, the state's argument—that it is reasonable to infer that all persons in close proximity to a "substantial drug-trafficking operation" have "at least some connection" to it—simply begs the question. In other words, constructive possession is a means by which the state can establish a criminal connection between an individual and drug evidence found nearby; to conclude that there is probable cause to arrest a person for possession based upon an abstract "connection" to nearby drug evidence would turn that inquiry on its head. For each of those reasons, we reject the state's contention that a constructive-possession analysis does not apply.

We turn to the merits of the state's two probable cause arguments, starting with its argument regarding

---

[4] The state also does not argue that Haugen had probable cause to believe that defendant had aided and abetted Mauel's possession of methamphetamine in some way that did not involve either actual or constructive possession.

Haugen's discovery of the syringe under defendant's seat. As explained above, "[w]here the state seeks to prove that a person in a vehicle possessed drugs found in that vehicle, an inference of constructive possession is reasonable *only* if some facts link the defendant's presence in the vehicle where the drugs were observed to the defendant's right to control those drugs." *Keller*, 280 Or App at 254 (internal quotation marks, brackets omitted; emphasis added). As we understand the state's constructive-possession argument—which, we recognize, is not the state's primary argument—it is that, under the totality of the circumstances, the discovery of a used, uncapped syringe under the passenger seat, accessible to defendant but not to Mauel, provided Haugen with probable cause to believe that defendant had the right to control the methamphetamine found on the scale and syringes that Haugen found elsewhere in the truck.[5] Focusing, as the state does, on the syringe found under defendant's seat, we conclude that Haugen lacked an objectively reasonable basis to believe that, more likely than not, defendant constructively possessed that syringe—much less to believe that she constructively possessed the truck's other contents. Haugen therefore did not have probable cause to arrest her for unlawful possession of methamphetamine based upon that discovery.

In reaching that conclusion, we find two of our previous decisions particularly instructive. In *Keller*, we held that an officer lacked probable cause to believe that the defendant constructively possessed a heroin baggie found on the car seat next to his passenger's right leg, when the defendant was not under the influence at the time of the police encounter, the baggie was not in his line of sight, and there was nothing to indicate that the baggie's contents had recently been ingested. 280 Or App at 254-55. And, in *State v. Fry*, we concluded that the discovery of a "wet" but ultimately untested syringe under the car seat in which the defendant had been sitting could not support an inference

---

[5] That is, we do not understand the state to suggest that defendant's proximity to a used syringe, together with her deceptive behavior, appearance, and association with Mauel, provided Haugen with probable cause to believe that she possessed methamphetamine *other* than the methamphetamine found in the truck.

that he constructively possessed methamphetamine found under the control of the car's other three occupants. 191 Or App 90, 93, 96, 80 P3d 506 (2003). We reached that conclusion even though, in that case, an officer approaching the parked car in which the defendant was seated heard one of the car's occupants yell out "cop," saw all four occupants moving about as though they were hiding something, saw the defendant make a "furtive" gesture—specifically, abruptly leaning forward towards the underside of his seat—and ultimately found used syringes on two of the other occupants and a full syringe under the seat of the third. *Id*. at 92, 96. Although we acknowledged that the defendant's behavior provided a potential link between the defendant and the syringe found under his seat, the circumstances could not support an inference that he had a right to control the syringes in the possession of the car's other occupants. *Id*. at 96.

In this case, the circumstances surrounding the discovery of a used syringe under defendant's seat are analogous to the circumstances in *Keller* and *Fry*. Here, although Haugen thought that defendant looked like an active drug user, nothing in the record suggests that Haugen suspected that she was under the influence at the time. That is, although Haugen described the syringe he found as "used," there was no evidence that he saw drug residue within the syringe or anything else that might suggest it had recently been used, or that, if it had been, defendant had been the one who had used it. Moreover, much like the heroin baggie at issue in *Keller*, the syringe in this case was hidden from defendant's view. Finally, unlike the defendant in *Fry*, defendant in this case was not described by Haugen as having made any furtive gestures or shown any other signs that she was aware of the syringe or was somehow connected to it. Under those circumstances, we question whether—even in light of Haugen's belief that defendant was an active drug user with "something to hide"—the discovery of the syringe under her seat provided Haugen with probable cause to believe that defendant "knowingly exercise[d] control over [the syringe] or ha[d] the right to do so." *Keller*, 280 Or App at 253. More significantly, however, even if defendant's appearance and seemingly deceptive behavior *could* provide some link to the empty syringe that Haugen found

under her seat, that would nonetheless fail to support an inference that she constructively possessed any of the drugs or other evidentiary items found in Mauel's truck. *See Fry*, 191 Or App at 96. Thus, for either or both of those reasons, Haugen's discovery of a used syringe under defendant's seat did not provide Haugen probable cause either to believe that defendant possessed the methamphetamine in the back of the truck or to arrest her on that basis.

We next consider the state's argument that the evidence of what appeared to be a "substantial drug-trafficking operation" provided probable cause to arrest defendant for possession of methamphetamine. Although the state does not expressly link that reasoning to its constructive-possession argument, one *might* view the state's "had at least some connection" argument as a constructive-possession argument by another name. Thus, we consider whether, based upon defendant's association with Mauel, the fact that *Mauel* appeared to be involved in drug trafficking, and the evidence of that operation found in close proximity to defendant (who was herself an apparent drug user), Haugen reasonably believed that, more likely than not, defendant constructively possessed methamphetamine. Again, we find our case law instructive and conclude that there was insufficient evidence in this case linking defendant to the perceived drug-trafficking operation to establish probable cause as to constructive possession.

As in *Keller*, which was a probable cause case like this one, we find guidance in cases relying on constructive-possession analyses in a slightly different context: the denial of a defendant's motion for judgment of acquittal. *See Keller*, 280 Or App at 256 (noting *Sherman*, 270 Or App at 462-63; *State v. Leyva*, 229 Or App 479, 484-85, 211 P3d 968, *rev den*, 347 Or 290 (2009); and *State v. Coria*, 39 Or App 507, 509-12, 592 P2d 1057, *rev den*, 286 Or 449 (1979)). In *Sherman*, for example, we determined that evidence that the defendant had been engaged in a joint drug-selling enterprise with his female codefendant supported the inference that the defendant had been in constructive possession of cocaine found during a body-cavity search of the codefendant. 270 Or App at 463. There, the defendant was

prosecuted for various drug offenses premised, in part, on the state's theory that he had been in constructive possession of 5.67 grams of cocaine—a "dealer amount"—found hidden in the vagina of his codefendant, Dean. 270 Or App at 460-61. The defendant's arrest followed a month of surveillance of Dean's apartment for suspected drug activity. *Id.* at 460. When officers arrived at the apartment to execute a search warrant, they saw the defendant driving away with Dean as his passenger. *Id.* Following a brief pursuit, the officer who arrested the defendant heard him yell to Dean to " 'keep her mouth shut' and that they had been 'set up.' " *Id.* Additional evidence indicated that the defendant lived with Dean in her apartment, where officers found, in the pocket of a pair of men's pants, another 5.65 grams of cocaine packaged into 33 bindles. *Id.* at 461, 463. Finally, a "deputy testified that, in his experience, males involved in illegal drug sales will sometimes seek to insulate themselves from risk by enlisting females to conduct the actual drug transactions but will be present to receive the proceeds of drug sales." *Id.* at 460. Based upon that evidence, we agreed with the state that "the circumstantial evidence proving that [the] defendant was engaged in a joint endeavor to sell cocaine" with another person, Dean, was "sufficient to establish [the] defendant's right to control the cocaine" found in Dean's body when their vehicle was stopped by police. *Id.* at 462.

Here, in marked contrast to *Sherman*, Haugen had no information connecting defendant either to Mauel or to drug-related contraband other than her proximity to them both on the day of her arrest. That is, nothing Haugen discovered indicated that defendant and Mauel had an ongoing relationship, that she was associated with other places that were themselves connected with drug activity, or that she was working in concert with Mauel. For one thing, although Haugen thought that defendant had "something to hide," nothing she said or did compared to the defendant's insistence in *Sherman* that the codefendant "keep her mouth shut." 270 Or App at 460. Further, unlike the codefendant in that case, whose concealing of cocaine in her vagina gave factual context for a deputy's experience-based testimony that male drug dealers will sometimes insulate themselves by having female associates bear much of the

attendant risk, *id*. at 460-63, Haugen's theory that defendant and Mauel were engaged in a sex-for-drugs relationship appears to have been based on nothing but speculative, gender-based assumptions. Nothing of which Haugen was aware could support more than the barest of suspicions that defendant had obtained drugs from Mauel; Haugen's further inference that defendant and Mauel were exchanging sex for drugs is the essence of impermissible inference stacking. *See State v. Kolb*, 251 Or App 303, 314, 283 P3d 423 (2012) (describing stacking of inferences as relying on logical "bridge[s] never built"); *cf. State v. Daniels*, 348 Or 513, 520-22, 234 P3d 976 (2010) (rejecting the state's argument that the defendant, a suspected drug dealer, constructively possessed methamphetamine found in his girlfriend's purse, because evidence of a "romantic relationship" does not "give rise to an inference of a partnership relationship" involving the sharing of personal property, including drugs). Moreover, Haugen's training and experience alone could not cure that deficiency. *See State v. Ratliff*, 82 Or App 479, 483, 728 P2d 896 (1986), *aff'd*, 304 Or 254, 744 P2d 247 (1987) (an officer's training and experience may *enhance* the relevance of a particular fact). As we noted in *Webber*, "In order for an attestation regarding training and experience to support probable cause, it must connect a defendant's particular conduct or circumstances with the specific evidence that police seek, and it must be supported by objective facts derived from other sources." 281 Or App at 350 (internal quotation marks omitted). Here, the state points to nothing that could provide that objective underpinning to Haugen's assumption that defendant was engaged in a sex-for-drugs relationship; as a result, it cannot support probable cause.

The circumstances in *Leyva* and *Coria* also stand in stark relief to those present in this case. In *Leyva*, "evidence supported [the] inference that [the] defendant constructively possessed 20 pounds of marijuana in the back seat of a vehicle in which [the] defendant and another person had been driving 'for a considerable a distance' from one state to another." *Keller*, 280 Or App at 256 (quoting *Leyva*, 229 Or App at 484). Here, to Haugen's knowledge, defendant had been in Mauel's truck only a few minutes. Furthermore, unlike 20 pounds of marijuana, which would seem unlikely

to escape the notice of passengers over the course of an interstate road trip, the drugs found in this case were essentially trace amounts and concealed in boxes—which were themselves on the floor behind defendant's seat and so completely out of her view—and in the console. Similarly, in *Coria*, the "evidence was sufficient to establish that a passenger in a car constructively possessed narcotics hidden within it, because the people in the car were suspected of transporting narcotics between states and the passenger had been traveling with the other people in the car for over a week." *Keller*, 280 Or App at 256 (summarizing *Coria*, 39 Or App at 509-12). We reasoned that, given that context, the "evidence [was] susceptible of the conclusion that [the] defendant was more than a mere passenger." *Coria*, 39 Or App at 511.

Although in *Keller*, we distinguished the above cases on the grounds that, in *Keller,* "no evidence suggest[ed] that [the] defendant and his passenger were engaged in selling illegal drugs," evidence that was of considerable significance to the holdings in those other cases, 280 Or App at 256-57, we do not view defendant's circumstances as materially different from those of the defendant in *Keller*. That is, although Haugen may reasonably have believed that *someone* was engaged in illegal drug sales, defendant's connection to that evidence was far more attenuated than in *Sherman*, *Leyva*, or *Coria*. Mauel and defendant did not communicate in a manner that suggested they were working in concert, and Haugen had no nonspeculative basis to believe the two had an ongoing relationship, as was the case in *Sherman*. Further, despite defendant's proximity to the drug-trafficking evidence in Mauel's rental truck, the few minutes that Haugen knew defendant was in the truck were a far cry from the hours, days, or even weeks that the defendants rode in cars laden with contraband in *Leyva* and *Coria*. As a result, defendant's brief proximity to an apparent drug-trafficking operation is insufficient to establish that she was anything more than Mauel's passenger.

In sum, the evidence available to Haugen before defendant's arrest could not establish that, more likely than not, she actually or constructively possessed the drugs found in the vehicle. Thus, under the totality of the circumstances, Haugen's subjective belief that he had probable

cause to arrest defendant for unlawful possession of meth-amphetamine was not objectively reasonable. As a result, defendant's search incident to that arrest was unlawful, and the trial court erred in denying her motion to suppress the evidence Haugen had obtained in the course of that search. Further, because the state advances no argument that the subsequent search of defendant's cellphones was somehow attenuated from the illegal search that led to their seizure, we conclude that the trial court erred in denying defendant's motion to suppress the results of that search.

Reversed and remanded.